## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| **LASCELLES GEORGE MCLEAN and VIRGINIA MCLEAN,**<br><br>**Plaintiffs,**<br><br>**v.**<br><br>**GMAC MORTGAGE CORPORATION, a foreign corporation,**<br><br>**Defendant.** | Case No. _____<br><br>06 - 22795<br><br>CIV-GRAHAM<br><br>MAGISTRATE JUDGE O'SULLIVAN |

### COMPLAINT

Plaintiffs hereby respectfully allege as follows:

### THE PARTIES

1.      Plaintiffs Lascelles George McLean and Virginia McLean are residents of Miami Springs, Florida.

2.      Defendant, GMAC Mortgage Corporation ("GMAC"), is a foreign corporation incorporated under the laws of the State of Pennsylvania and duly authorized to transact business in the State of Florida. It is engaged, among other things, in the servicing of federally regulated residential loans. GMAC may be served through its principal office at 4 Walnut Grove Drive, Horsham, PA 19044, or through its principal mailing address at 100 Witmer Road, PO Box 963, Horsham PA 190044.

### JURISDICTION & VENUE

3.      This Court has subject matter jurisdiction in the form of federal question and/or diversity jurisdiction.

4.      Venue is proper in this District and conferred on this Court by 12 U.S.C. § 2605. Jurisdiction is proper and is  conferred on this Court by 28 U.S.C. § 1391 (a)(1)(2), (b)(1)(2), and(c).

1

## BACKGROUND FACTS

### A. General Background.

5.      In 1992, Plaintiffs bought a home located at 216 Shadow Way, Miami Springs, Florida 33166.  The purchase price was approximately $156,000.

6.      GMAC was the mortgage lender for the home purchase.

7.      The terms of the mortgage contract dated January 24, 1992("contract"), included Plaintiffs' prepayment of the first year escrow amount and making monthly payments thereafter into an escrow account. Pursuant to said contract, GMAC was obligated to maintain Plaintiffs' escrow funds to ensure that homeowner's insurance premiums, private mortgage insurance, and property taxes were timely paid.

8.      "Lenders often establish an account called escrow or impound account, to pay the tax and insurance and other additional charges of your monthly mortgage payment." (GMAC website, glossary of terms).    Upon information and belief, during the pertinent times, GMAC required consumers to pay into escrow accounts across approximately 77% of its servicing portfolio.  In setting up escrow accounts and obligating consumers to make payments into it, GMAC likewise obligated itself to perform certain duties of care and, fiduciary duty in administering account on the behalf of borrowers.

9.      The mortgage contract placed a duty on GMAC to properly manage, secure, and service Plaintiffs' escrow account.

10.    Escrow funds for 1992 and every subsequent year remaining were paid into the escrow account maintained by GMAC for the sole purpose of paying homeowner's insurance premiums, private mortgage insurance ("PMI"), and homestead property taxes of the consumer/mortgagor during the coming year.

11.    Plaintiffs at closing prepaid escrow amounts for 1992. During 1992, money collected for escrow was to be used to pay 1993 tax and insurances. In 1993, GMAC continued to collected funds from Plaintiffs to pay taxes and insurance in 1994, and so forth.

12.    During 1994, Plaintiffs' hazard insurance became force-placed as a result of the devastating impact of Hurricane Andrew, which led insurance companies to withdraw from the State.

13.    In April 1996, Plaintiffs were in a severe automobile accident which led to a loss of income. In May 1996 Plaintiffs became delinquent on their mortgage payment. By September 4, 1996, however, Plaintiffs brought their mortgage account current and it remained so for the rest of the year.

14.    In 1996, Plaintiffs paid $8,003.38 into their escrow account.

15.    Upon information and belief,  under the terms of said contract, GMAC was to  use the $8,003.38 to pay the Plaintiffs' homeowner's insurance premiums, private mortgage insurance ("PMI"), and homestead  property taxes for 1997.

16.    Upon information and belief, though Plaintiffs paid adequate funds into escrow in 1996 to cover the hazard insurance premium, GMAC failed to properly disburse those funds to timely pay said premium.

17.    Upon information and belief, on January 23, 1997, GMAC disbursed funds in the amount of $2,714.00 from the plaintiffs' escrow account to pay for hazard insurance. GMAC subsequently and improperly billed Plaintiffs for this amount.

18.    According to GMAC's consumer disclosures, Plaintiffs' escrow balance, as of January 23, 1997, was a negative balance of $2,736.15, which was incorrect.

3

19.    Upon information and belief, GMAC's own accounting practice and lack of proper servicing of the escrow account created the negative balance. Plaintiffs' payments into escrow were timely and in the proper amount to pay for taxes and insurances.

20.    GMAC's disclosures continuously reflected continuing negative escrow balances over the succeeding months, specifically: February 1997 (negative balance of $2,277.52), March (negative balance of $1,956.77), April (negative balance of $1,636.02).

21.    GMAC refused to provide information regarding Plaintiffs' escrow account history information for May through October 1997. It was later revealed that as of November 17, 1997 the escrow balance soared to a negative balance of $4,169.01, even though Plaintiffs had been depositing sufficient funds into the escrow.

22.    As a result of GMAC's failure to properly service the escrow account, Plaintiffs' monthly escrow payments increased substantially.

23.    GMAC's negligent accounting practices, forced Plaintiffs' escrow expense upwards to over $400.00 per month.

24.    As a result, Plaintiffs' normal mortgage payments of $1,526.02 increased to nearly $2,000.00 per month.

25.    This unexpected jump in the monthly mortgage payment, caused by GMAC's negligence, made it difficult for Plaintiffs to make the higher monthly payment.

26.    In May 1997, Mrs. McLean suffered a physical injury and could not work for a month. In June 1997, Plaintiffs contacted GMAC and explained the difficulties they were having and asked for a forbearance agreement or a loan modification.

27.    GMAC failed to respond to said request from June to August of 1997, when said request for a forbearance or loan modification was denied by GMAC in August of 1997.

28.    On August 15, 1997, Plaintiffs mailed GMAC a partial payment for over $3,000.

29.     On September 4, 1997, GMAC returned the check of August 15, 1997, refused to accept all subsequent mortgage payments checks, and accelerated the mortgage.

30.     On September 10, 1997, GMAC began an illegal and unethical foreclosure proceeding in Dade County, Case Number 98-16416.

31.     On September 9, 1999, without any notice to the Plaintiffs, GMAC illegally caused the Plaintiffs' home to be sold at a judicial sale on that date.

32.     On December 14, 1999, the State Court for Dade County vacated the sale because GMAC failed to provide proper notification. Direct evidence will show that GMAC's actions of foreclosure forced the Plaintiffs to declare bankruptcy to save their homestead.

33.     The pertinent bankruptcy proceedings occurred in the United States Bankruptcy Court for the Southern District of Miami, Case Nos. 00-13256-BKC-RAM (Chapter 13); 00-10559-AJC (Chapter 13); 98-19925-RAM (Chapter 13); and 06-1769-BKC-RAM (Adversary proceeding).

34.     Upon receiving notice of the Chapter 13 Bankruptcy filing (98-19925), GMAC conceded, and offered Plaintiffs a forbearance plan if Plaintiffs would dismiss the bankruptcy action.

35.     To their detriment, Plaintiffs relied on this promise and dismissed the bankruptcy.

36.     Then, in an about-face, GMAC, after several months of stalling, refused to do a forbearance plan or a loan modification.

37.     Instead, in 1999 GMAC filed a second foreclosure proceeding knowing that Plaintiffs could not file another bankruptcy because the initial one had been dismissed with prejudice for six months.

38.     Plaintiffs filed an emergency motion requesting the bankruptcy court to shorten the prejudice period. Upon hearing what GMAC had done, the Court granted Plaintiffs permission to re-file immediately. (This filing was later dismissed because Plaintiffs failed to attend the "Meeting of Creditors"; however Plaintiffs were allowed to file a 3rd case.)

39.    Plaintiffs then learned that GMAC was charging twice for the same services various times, or "double dipping." This was brought to the Court's attention and the Court ordered GMAC's claim reduced accordingly.

40.    Plaintiffs then received a letter on December 8, 2004 from GMAC stating that Plaintiffs owed $22,016.92 for escrow shortages.

41.    GMAC demanded that the Plaintiffs either pay the entire amount of the escrow shortage or increase their monthly payments from $1,674 to $3,923.

42.    On December 15, 2004 Plaintiffs sent GMAC a qualified written letter of request pursuant to the Real Estate Settlement Procedures Act ("RESPA") contesting GMAC's claim and demanding a full explanation.

43.    GMAC failed to respond within the 20 days mandated by RESPA necessitating Plaintiffs to send a second written request in February 2004.

44.    GMAC finally responded by letter on March 9, 2005. This letter was also both late and inadequate under the requirements of RESPA.

45.    Despite GMAC's resistance, Plaintiffs subsequently obtained information tending to show the following:

      a.  GMAC's failure to follow the state Court's Order to correct its improper activities had apparently resulted in its retaining title to Plaintiffs' property from 1999 to 2006.

      b.  It is unclear whether GMAC at all pertinent times was the mortgagee of record; nor has complete responsive information been provided by GMAC despite the fact that the McLeans are entitled to know the identity of the owner of the loan. For example, docket records for the 1998 bankruptcy indicate that Fannie Mae may have been at one time the mortgagee of record. GMAC accounting records, including but not limited to its loan history payments, and escrow analysis statements, contain errors and inconsistencies, as well as gaps in records.

      c.  On one or more occasions, GMAC apparently misrepresented to state and/or federal courts that Plaintiffs were delinquent in their payments when they were not.

      d.  GMAC unilaterally cancelled Plaintiffs' force-placed insurance with Empire Fire & Marine (2000 -- $1,272 premium), and in 2001 obtained more expensive coverage with

6

Empire Indemnity Insurance Company (2001-2002 -- $3,920 premium, 2002-2003 -- $3,866 premium). Then, in 2004, switched the policy again to Balboa Insurance Company ($2,845 premium).

e. GMAC allowed the force-placed insurance to lapse for almost a year, but still charged Plaintiffs for the premium.

f. On another occasion, GMAC failed to pay the force-placed insurance policy for a year during 1997, even though escrow funds were available to do so.

g. GMAC apparently transferred the servicing of the loan to another company but failed to notify Plaintiffs of this transfer as required by RESPA.

h. As a result of manufacturing a default on Plaintiffs during 1997, GMAC may have benefited as a result of a private mortgage insurance ("PMI") claim being filed.

i. When asked to produce the actual PMI policy to the Plaintiffs, or the existence of PMI, GMAC has refused to do so.

j. GMAC, in violation of the automatic stay and/or other law reported Plaintiffs to be late in payments to credit reporting agencies.

k. GMAC has on two or more occasions refused to release insurance claim checks on the grounds that Plaintiffs were not current on their mortgage payment. The first incident occurred in 2003. The court ordered GMAC to release this payment in 2006. The second time, GMAC held the check for five months and released it in May 2006.

l. GMAC improperly reported to national credit agencies that the Plaintiffs were 30 to 180 days late on their mortgage payment obligations throughout the course of the bankruptcy and thereafter.

## B. Facts Regarding Apparently Missing Records.

46.     For the year 1997, GMAC has taken the position that it did not charge escrow for hazard insurance.   Upon information and belief this failure on GMAC's part was deliberate.

47.     Upon information and belief, GMAC destroyed, lost and/or otherwise improperly failed to retain and produce mortgage records for a material part of the year 1997.

48.     In 1999, GMAC increased the escrow bill dramatically, to recover what it stated it did not bill for earlier. This was a RESPA violation, because RESPA imposes a duty on GMAC to manage escrow funds competently, as well as a breach of contract, breach of fiduciary duty and of other law.

49.     Under RESPA, a mortgage servicer must keep relevant records for five years after it

ceases servicing the mortgage. *See* 24 C.F.R. § 3500.17 ("The servicer responsible for servicing the borrower's escrow account shall maintain the records for that account for a period of at least five years after the servicer last serviced the escrow account.") This time period has not yet begun to accrue since GMAC still services the mortgage.

50. During pertinent times, upon information and belief, GMAC has represented to Standard & Poors that it captured copies of all documents in scan-in optical disk. Accordingly it is unknown how and why records for 1997 came to be lost.

51. In prior bankruptcy proceedings, Plaintiffs requested GMAC to produce its complete records. The bankruptcy Court ordered complete records produced. (See, e.g., Order entered May 25, 2006 in Case No. 00-13256-BKC-RAM. To date, however, GMAC has failed/ refused to produce complete records for 1997.

52. GMAC also produced an "Explanation of Escrow Analysis" including a purported narrative description of 1997 mortgage history, but the underlying mortgage history for part of 1997 have not been produced.

53. A GMAC document dated April 24, 1998 and entitled "History Information," only produced after years of requests by the Plaintiffs, references a "loan service sale" occurring on November 24, 1997 and apparently cuts off after that date. Upon information and belief, GMAC conducted a loan servicing sale and did not properly notify Plaintiffs.

54. A document entitled "Excelis Conversion -- Case History" provides some data for the time period beginning May 19, 1993 and apparently cuts off at November 22, 1997.

55. There are other instances of missing and/or lost documents and information. When GMAC sought to foreclose upon Plaintiffs, it failed to serve written notice of the foreclosure on Plaintiffs.

56. Plaintiffs wrote a RESPA letter to GMAC dated December 15, 2004 in response to a

December 8, 2004 GMAC letter purporting to impose increased charges on Plaintiffs. However GMAC claims never to have received the letter.

57.     A GMAC document dated June 15, 2005, and only produced after years of requests by the Plaintiffs, states "I can't say why the file would have been destroyed".

### C. Facts Regarding PMI Insurance.

58.     In a representation to the bankruptcy Court, GMAC stated that it had never made a claim on the PMI insurance related to the property. This representation was made in writing, filed May 10, 2006, by Thomas Moan, Performance Review Analyst for GMAC, in response to an Order by the bankruptcy Court dated April 18, 2006 which explicitly required GMAC to represent "whether GMAC has filed any claims and received payment for claims filed under any PMI policy related to the Debtors' mortgage."

59.     The subject mortgage has been held and/or serviced over time by several GMAC entities and/or contactors, including the following:

      a.  GMAC Mortgage Corporation, PO Box 57003, Irvine CA 96210-7003.

      b.  GMAC Mortgage Corporation, PO Box 10430, Van Nuys CA 91410.

      c.  GMAC Mortgage Corporation, 500 Enterprise Road, Suite 150, Horsham PA 19044.

      d.  GMAC Mortgage Corporation, 3451 Hammond Avenue, Waterloo IA 50702.

      e.  GMAC Mortgage Corporation of IA, 3451 Hammond Avenue, Waterloo IA 50702.

      f.  GMAC Mortgage Corporation of PA, 6600 N. Andrews Ave., Fort Lauderdale FL 33309.

      g.  GMAC Mortgage Corporation, 1900 Summit Tower Blvd., Suite 500, Orlando FL 32810.

      h.  GMAC Mortgage Corporation of PA, 8360 Old York Road, Elkins Park, PA 19117-1590.

      i.  First Mortgage Loan Servicing, PO Box 4025, Coraopolis PA 15108-6925.

60.     In court pleadings in the prior proceedings, GMAC represented that it was f/k/a GMAC-

PA. (See May 19, 2005 letter from GMAC's counsel to Judge Friedman, describing the client as "GMAC Mortgage Corporation, F/K/A GMAC Mortgage Corporation of PA").

61.     The underlying mortgage loan was originated by GMAC Mortgage Corporation of Pennsylvania.

62.     The declarations page for the 1992 PMI insurance policy reflects that the GMAC entity on the insurance is GMAC-PA.

63.     Upon information and belief, the PMI policy was updated, amended, renewed, and/or changed carriers over the years, but GMAC has failed/ refused to produce those policy documents, despite request to do so in the bankruptcy proceedings.

64.     Upon information and belief, a PMI claim may have been made during the same 1997 time period during which critical documents have not been produced; despite GMAC's representations that no claim was made. If so, then in 1997, GMAC may have declared Plaintiffs in default, sought to transfer the mortgage to Fannie Mae, made a claim under the PMI policy, and received proceeds from that claim, but did not deduct those proceeds from their claim against the Plaintiffs that led Plaintiffs to seek refuge in bankruptcy.

65.     References to one or more Fannie Mae entities and/or assignees including Federal National Mortgage Association, c/o Glen Rubin, 56 Perimeter Center E NE, Atlanta GA 30346, and Max Flow Corp., c/o Becket and Lee, PO Box 2434, Carol Stream, IL 60132, exist on the docket sheets for the bankruptcy proceedings.

66.     A GMAC document dated April 24, 1998,   and only produced after years of request by the plaintiffs, references a "loan service sale" occurring on November 24, 1997. Upon information and belief, GMAC conducted a loan servicing sale and did not notify the Plaintiffs.

**D. Facts Regarding Hurricane Damage.**

67.     In October 2005, Plaintiffs made a claim to Balboa Life and Casualty Insurance

Company ("Balboa") for damage to their home caused by Hurricane Wilma.

68.    Balboa approved the claim, but it did not send GMAC a claim payment check until February 2, 2006.

69.    GMAC knew or should have known that Plaintiffs' home was in danger of suffering additional damages if payment was not made right away, but GMAC did nothing to expedite the claim.

70.    GMAC owed Plaintiffs a duty to expedite their claim but failed in its duty.

71.    As a direct consequent of GMAC's failure to timely process the Plaintiffs' claim, their home suffered additional damage.

72.    Plaintiffs' home suffered more damage after February 2006 because GMAC held the funds until May 2006.

73.    GMAC refused to release the funds, arguing that Plaintiffs were late in making their mortgage payments. However, GMAC knew that the Court had ordered the Plaintiffs to make their mortgage payments to GMAC's attorney.

74.    Plaintiffs tried to get their funds released by making numerous telephone calls and writing numerous letters to GMAC and its attorney from January through May 2006.    In       those telephone conversations and letters Plaintiffs also told GMAC and its attorney that the delay was causing additional harm to the house.

75.    In addition, by GMAC's refusing to release insurance claim funds until ordered by the court to do so, Plaintiffs were denied the right to recover refundable depreciation money. This is an amount deducted from the replacement cost which was to be refunded to Plaintiffs once the repairs were completed. Furthermore, money held by GMAC on the first claim was, upon information and belief, deposited into an interest bearing account, the sum of which was not remitted to the Plaintiffs. GMAC denied that it was their policy to deposit the claim money into an interest bearing account, however upon information and belief this statement was contradicted by Plaintiffs' receiving an

interest check on funds held by GMAC from February to May of 2005.

**E. Facts Regarding Extra Escrow Charges.**

76.    GMAC brought a foreclosure action against the Plaintiffs when it had no basis to do so, and which was triggered by purported default caused by GMAC's own improper practices.

77.    GMAC did not serve the foreclosure papers on the Plaintiffs.

78.    GMAC did not obtain a valid or properly worded foreclosure order.

79.    GMAC was ordered to undo the foreclosure yet kept title to the house in its name thereby allowing tax charges to accrue, which it then sought to use against the Plaintiffs claiming a right to them under the escrow arrangement.

80.    When Plaintiffs sought detail as to what was occurring via a RESPA letter, GMAC failed to abide by the statute or provide a useful answer.

**F. Facts Regarding Surplus Lines Insurance.**

81.    In 2001, GMAC imposed a new kind "surplus lines" insurance policy through Empire Indemnity Insurance Company on the Plaintiffs without their choice or consent, via an "Additional Named Insured Certificate" dated September 17, 2001, under Policy Number RFR113071-3, for a policy term from September 9, 2001 through September 9, 2002.

82.    The price of this policy was over three times that of the prior policy.

83.    Upon information and belief, GMAC took an unconscionable fee out of the premium thereby causing its drastic rise.

84.    The premium increased from $1,272 to $3,920 per year.

85.    GMAC in addition purportedly collected a surplus lines tax and fee, however it is unknown whether this was ever properly remitted to the State.

86.    Though the very policy names Mr. McLean as a co-insured, when he requested a copy of the policy in the bankruptcy proceedings, GMAC would not produce it. Subsequently GMAC only

produced the declaration page for the policy as of 1992.

87.    In light of the unconscionably high insurance premium of $3,920, Plaintiffs are entitled to a refund.

### G. Tolling of the Statute of Limitations.

88.    GMAC is estopped, tolled and barred from raising any applicable statutes of limitations by its conduct to date with regard to this matter, through its own improper conduct and/or fraudulent concealment of material facts.

89.    Plaintiffs in the bankruptcy proceedings first requested documents as early as September 2000.  Yet GMAC did not finally produce relevant documents until 2004.

90.    When GMAC finally produced documents, they did not include 1997 analysis or pertinent escrow history data for 1997.

91.    During pertinent times, GMAC knowingly engaged in acts sufficient to justify a finding of fraudulent concealment, gross negligence, malfeasance, misfeasance, nonfeasance, and willful blindness, so as to otherwise justify a finding of equitable estoppel or equitable tolling sufficient to toll any statute of limitations which may apply.

### H. Harm Suffered by the Plaintiffs.

92.    Plaintiffs have suffered greatly as a result of GMAC's wrongful the practices.  Plaintiffs have endured years of harassment, unnecessary legal expenses, and emotion distress, as well as property damage caused by GMAC's failure to monitor its own mortgage servicing practices, and other damages.  Plaintiffs were deprived of their privacy, subject to the ridicule of their family, friends, and neighbors; denied the right to control their finances; and made to incur additional expenses directly and indirectly resulting from participating in the bankruptcy (*i.e.*, paying the trustee 10% of the total amount paid into the bankruptcy plan, paying the full amount of the IRS claim when an arrangement was available to substantially reduce the amount that had to be repaid, etc.).

## COUNT ONE
## CLAIM UNDER RESPA

93.     Plaintiffs incorporate herein the preceding allegations by reference.

94.     Under RESPA Section 6, 12 U.S.C. § 2605, GMAC was subject to certain statutory duties in connection with its servicing of the mortgage.

95.     At all times relevant, GMAC violated 12 U.S.C. § 2605(e) that establishes certain duties for servicers of federally related mortgage loans when they receive qualified written requests from a borrower.

96.     Plaintiffs made qualified written requests under 12 U.S.C. § 2605(e), yet GMAC failed to provide timely or adequate written responses as required by 12 U.S.C. § 2605(e).

97.     GMAC violated 12 U.S.C. § 2605(g) requiring that GMAC properly manage the escrow account.

98.     GMAC violated 24 C.F.R. § 3500.17(k) requiring GMAC to properly manage the escrow account.

99.     RESPA allows an affected consumer to recover damages for violations under 12 U.S.C. § 2605(g) and 12 U.S.C. § 2605(f).

100.    This claim is brought in accordance with 12 U.S.C. § 2605(f)(3), and any statute of limitations is subject to equitable tolling and/or equitable estoppel.

101.    RESPA, 12 U.S.C. § 2605(g) requires that "[i]f the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, the servicer shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due."

102.    As early as 1996-97, GMAC violated its duties under RESPA and improperly billed Plaintiffs for escrow items. This created a negative balance which GMAC then used to claim a default

and initiate foreclosure. During the pertinent times, GMAC charged twice for the same services, or "double dipped." In so doing, GMAC violated 12 U.S.C. § 2605(g) requiring that the "the servicer shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due," and not on fictitious double or multiple occasions.

103.   By letter dated December 8, 2004 GMAC purported to impose increased charges on Plaintiffs, "due to an increase in the escrow funds." This "increase" was unfounded.

104.   Plaintiffs wrote a RESPA letter to GMAC dated December 15, 2004 in response to a December 8, 2004 GMAC letter purporting to impose increased charges on Plaintiffs. However GMAC claims never to have received the letter.

105.   Plaintiffs sent a second letter under RESPA which GMAC admitted receiving on February 25, 2005.

106.   When GMAC finally responded on March 9, 2005, it gave a vague response, which inferably indicates that GMAC held to the position that Plaintiffs owed the higher figure found in the December 8, 2004 GMAC letter, yet was waiting until after the end of the bankruptcy proceedings and protection to seek it from the Plaintiffs.

107.   The underlying amounts claimed by GMAC arose from GMAC's own errors in administering the mortgage. Specifically, despite being ordered to void out the improper foreclosure that had resulted in an improperly obtained order, GMAC sold the property to itself, put the title in its name, and allowed higher tax charges to be assessed on that basis, which it then sought to impose on Plaintiffs. Stated differently, GMAC, after purchasing Plaintiffs' property during an improper foreclosure sale, put the title in its name. Despite being ordered to rescind the foreclosure, GMAC drafted a deficient order for the Court's execution and failed to reconvey title to Plaintiffs. This failure caused higher taxes to be assessed on the property, which GMAC then sought to impose on Plaintiffs.

108.   RESPA, 12 U.S.C. § 2605 states that the lender must notify the debtor of any corrective

action and make appropriate and detailed disclosures.  GMAC breached these RESPA consumer protections.  Specifically, GMAC failed within the required time to provide, in any coherent manner, a statement of the reasons explaining its position; nor did it provide the name and address of the person who could be contacted to provide more information.  In fact, the purported response letter is unsigned.

109.    GMAC improperly reported negative credit information pertaining to Plaintiffs to one or more credit reporting agencies including on January 1, 2005, March 1, 2005, and/or April 1, 2005, in violation of RESPA, 12 U.S.C. § 2605, which states stating during the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency (as such term is defined under section 1681a of title 15).

110.    As a direct and proximate result of GMAC's violations of RESPA, Plaintiffs are entitled to damages as allowed by statute for their actual damages including their mental suffering, constant worry and aggravation, time and inconvenience, plus all cost associated with bringing this action.

### COUNT TWO
### CLAIM UNDER FAIR DEBT COLLECTION PRACTICES ACT

111.    Plaintiffs incorporate herein the preceding allegations by reference.

112.    Defendant violated the Fair Debt Collection Practices Act ("FDCPA") by its improper conduct in attempting to collect amounts not permitted by law, and by using unfair and fraudulent/ unlawful collection methods, in violation of 15 U.S.C. § 1692f, and by otherwise violating the FDCPA.

113.    The FDCPA may apply to a mortgage servicing company where the mortgage at issue was in default at the time when servicing began.  As noted above, Plaintiffs upon information and belief allege that loan servicing rights may in fact have been assigned or transferred on one or more occasions, and may have been transferred back to GMAC at a time when GMAC contended the

16

Plaintiffs were in default.

114.   Plaintiffs are entitled to damages as provided for under 15 U.S.C. § 1692k.

115.   Defendant engaged in violations of the FDCPA against Plaintiffs within the year proceeding the filing of this action, and accordingly this claim is brought within the applicable statute of limitations under 15 U.S.C. § 1692k(d).

**COUNT THREE**
**CLAIM UNDER FLORIDA DECEPTIVE AND UNFAIR TRADE**
**PRACTICES ACT**

116.   Plaintiffs incorporate herein the preceding allegations by reference.

117.   The Florida Deceptive and Unfair Trade Practices Act, Fl Stat. § 501.201 *et seq.* ("FDUTPA"), protects against unfair methods of competition, unconscionable acts and practices, and unfair or deceptive acts or practices in the conduct of commerce.   Fl Stat. § 501.204.

118.   The FDUTPA expressly allows for a private cause of action for relief.   Fl Stat. § 501.211(2) ("In any action brought by a person who has suffered a loss as a result of a violation of this part, such person may recover actual damages, plus attorney's fees and court costs.").

119.   Under Fl Stat. § 501.203, Defendant conducted trade or commerce within the scope of the FDUTPA.

120.   Plaintiffs are consumers as defined by Fl. Stat. § 501.203.

121.   Defendant's conduct as alleged above constitutes unfair and deceptive practices in violation of FDUTPA including Fl Stat. § 501.204.

122.   Defendant's practices were illegal, unfair or deceptive acts or practices in the conduct of interstate trade or commerce and were inherently deceptive. Defendant's practices offend public policy and were immoral, unethical, oppressive, and unscrupulous.

123.   Defendant violated Fl Stat. § 501.137, including by failing to promptly pay insurance premiums from the escrow account, and by failing to provide Plaintiffs with one or more annual

statements of the escrow account.

124.    Defendant's conduct was premeditated, implemented, approved and/or executed in the State of Florida, which has an interest in preventing violations of the FDUTPA.

125.    Under Fl Stat. § 95.11(3), a four year statute of limitations governs an action founded on a statutory liability. Plaintiffs allege wrongdoing within this time period.

126.    Plaintiffs have been damaged in an amount to be proven at trial as a direct and proximate result of Defendant's unlawful practices, and under Fl Stat. § 501.211 and under Fl Stat. § 501.2105, they are entitled to recover damages, as well as injunctive relief, and attorney's fees.

**COUNT FOUR**
**BREACH OF CONTRACT**

127.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

128.    Defendant incurred a contractual duty pursuant to certain documents, including, without limitation the mortgage agreement obligating Defendant to properly administer the mortgage and escrow funds.

129.    GMAC breached an implied-in-law promise not to do anything to undermine or destroy Plaintiffs' rights to receive the benefit of the parties' mortgage and escrow agreement.

130.    Defendant's practices as alleged herein violated those terms of the mortgage agreement and additionally violated its duty of good faith with regard to the performance of its contract with Plaintiffs.

131.    Under Fl Stat. § 95.11(2), Plaintiffs allege breach of contract accruing within the five year statute of limitations.

132.    Defendant breached its contract with the Plaintiffs and is therefore liable to them for damages arising from said breach.

## COUNT FIVE
## BREACH OF FIDUCIARY DUTY

133.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

134.   Defendant assumed a fiduciary duty toward Plaintiffs in the course of administering escrow accounts, collecting escrow funds, and paying funds out of escrow for property taxes and insurance on their behalf.

135.   A special confidence was reposed by consumers in Defendant as one who in equity and good conscience was bound to act in good faith and with due regard to the interests of the ones reposing such confidence.

136.   Defendant breached its fiduciary duty toward Plaintiffs by failing to act in and with good faith, fair dealing, and loyalty, with regard to its mortgage servicing practices.  As a direct and proximate result, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT SIX
## FRAUD

137.   Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

138.   During pertinent times, GMAC uttered and/or promulgated in writing one or more false statements of fact, or intentionally concealed material facts, with knowledge by the Defendant that such statements were false at the time it they were made, or that the concealment was tantamount to a misrepresentation; GMAC's fraudulent representations, concealments and omissions where made to induce the Plaintiffs to act in reliance thereon; there was actual reliance by the Plaintiffs on the correctness of the statements; and as a direct and proximate result, the Plaintiffs suffered damage.

139.   Defendant engaged in false representations or concealments of material facts, including without limitations:

a. Misapplying the Plaintiffs' payments and over billing Plaintiffs on their mortgage, beginning as early as 1996-97, then concealing material records of the mortgage history during the pertinent times;

b. Deliberately without sending notice of foreclosure to the Plaintiffs, caused the Plaintiffs' home to be sold to GMAC;

c. Failing to put title for the home back in the Plaintiffs' name after the State Court for Dade County vacated the sale;

d. Concealing from Plaintiffs that additional tax charges were accruing due to the improper failure to return the title to the Plaintiffs for their home;

e. Intentionally deceiving Plaintiffs into dismissing their bankruptcy proceeding by representing that upon dismissal, GMAC would create a forbearance plan; then filing a second foreclosure proceeding knowing that Plaintiffs could not file another bankruptcy because the initial one had been dismissed with prejudice for six months;

f. Destroying, losing and/or failing to produce mortgage records for a material part of the year 1997 in violation of Court Order;

g. Misrepresenting to the Bankruptcy Court that it had never made a claim regarding the subject mortgage or property on the PMI insurance related to the property; and

h. Concealing from Plaintiffs the existence of a "loan service sale" that occurred in or about November 1997.

140.    Defendant's conduct was reasonably calculated to deceive Plaintiffs.

141.    Defendant's representations and concealments were made with intent to deceive Plaintiffs.

142.    Defendant's misrepresentations and concealments did in fact deceive Plaintiffs.

143.    Defendant's misrepresentations and concealments were relied upon by Plaintiffs, and resulted in their being damage.

144.    As a direct result of Defendant's misconduct, Plaintiffs have been damaged in an amount to be proven at trial.

**COUNT SEVEN**
**NEGLIGENCE**

145.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs as though fully set forth herein.

146.    Defendant's conduct, as alleged herein, was committed willfully, knowingly, negligently, and recklessly.

147.    Defendant negligently trained, supervised and instructed employees and agents with regard to performing the practices described herein.

148.    Defendant's mechanisms for supervising its staff and monitoring and approving mortgage loan servicing transactions were inadequate and negligently administered.

149.    Defendant's conduct constitutes gross negligence insofar as it was deliberate and reckless.

150.    Defendant's conduct constitutes gross negligence per se insofar as it involves the violation of laws designed to protect consumers.

151.    Defendant's conduct with regard to its delays in processing and paying on Plaintiffs' claim for hurricane damage was grossly negligent and Plaintiffs have suffered damages as a result. In October 2005, Plaintiffs made a claim to GMAC's force-placed insurance carrier, Balboa, for damage to their home caused by Hurricane Wilma. Balboa delayed payment and GMAC did nothing to expedite the claim process. Plaintiffs' home suffered more damage after February 2006 because GMAC held the funds until May 2006. GMAC argued it had no duty to release the funds because Plaintiffs were late in making their mortgage payments, which was untrue since the Bankruptcy Court had ordered the Plaintiffs to make their mortgage payments to GMAC's attorney. This course of events reflects grossly negligent conduct on the part of GMAC that caused actual harm in the form of property damage to the Plaintiffs' home.

152.    As a direct and proximate result of Defendant's grossly negligent conduct, Plaintiffs have been damaged in an amount to be proven at trial.

## COUNT EIGHT
## INJUNCTIVE AND DECLARATORY RELIEF

153.    Plaintiffs incorporate by reference the allegations contained in the preceding paragraphs

as though fully set forth herein.

154.    Plaintiffs continue to hold a mortgage with GMAC.

155.    In light of the past history of this mortgage to date, the Plaintiffs are very concerned with regard to GMAC's future practices under the mortgage, and ask that the Court order declaratory and injunctive relief so as to protect the Plaintiffs and obligate GMAC to perform its duties as required by the mortgage agreement.

156.    Under the circumstances, Plaintiffs are capable of showing that they are in imminent peril of harm that cannot be remedied absent injunctive relief, (*i.e.*, continued deceptive mortgage servicing practices by GMAC), and injunctive relief is accordingly appropriate.

157.    Plaintiffs are further entitled to declaratory and injunctive relief under Fl Stat. § 501.211(1) providing that anyone aggrieved by a violation of this part may bring an action to obtain a declaratory judgment that an act or practice violates this part and to enjoin a person who has violated, is violating, or is otherwise likely to violate this part.

158.    Plaintiffs therefore respectfully seek injunctive and declaratory relief in accordance with Bankruptcy Rule 7001(7) & (9).

## PRAYER FOR RELIEF

WHEREFORE, the Plaintiffs ask this Court to:

A.    Award Plaintiffs their actual, compensatory, economic, punitive, statutory and any other damages to which they may be entitled, in an amount to be determined at trial, for the improper conduct of Defendant;

B.    Award Plaintiffs the costs of suit, any discretionary costs as may be allowable by law, pre-judgment and post-judgment interest;

C.    Enter an order enjoining Defendant from engaging in further wrongful practices; and

D.    Award such other and further relief as the Court deems just and proper under the circumstances.

Dated: November_____, 2006.

Oscar Sanchez, Esq.
Oscar Sanchez Law Office
701 Brickell Key Blvd
Commercial Unit One
Miami, FL 33131
Phone: 305-416-0060
Fax:  305-416-9310

*Counsel for Plaintiffs*

John Hughes, Esq.
N.C. State Bar No. 22126
Wallace & Graham, P.A.
525 N. Main Street
Salisbury, NC  28144
Phone: 704-633-5244
Fax:  704-633-9434
*Pro hac vice pending*

~JS 44   (Rev. 11/05)

## CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. (SEE INSTRUCTIONS ON THE REVERSE OF THE FORM.) **NOTICE: Attorneys MUST Indicate All Re-filed Cases Below.**

### I. (a) PLAINTIFFS

LASCELLES GEORGE MCLEAN and VIRGINIA MCLEAN

**(b)** County of Residence of First Listed Plaintiff _____
(EXCEPT IN U.S. PLAINTIFF CASES)

**(c)** Attorney's (Firm Name, Address, and Telephone Number)

OSCAR E. SANCHEZ, P.A.
701 BRICKELL KEY BLVD. SUITE# CU-1
MIAMI, FLORIDA 33131 (305) 416-0060 / (704) 633-5244

### DEFENDANTS

GMAC MORTGAGE CORPORATION

County of Residence of First Listed Defendant _____
(IN U.S. PLAINTIFF CASES ONLY)
(IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED)

Attorneys (If Known)

MAGISTRATE JUDGE
O'SULLIVAN

CIV-GRAHAM

06-22795

**(d)** Check County Where Action Arose: ☑ MIAMI- DADE ☐ MONROE ☐ BROWARD ☐ PALM BEACH ☐ MARTIN ☐ ST. LUCIE ☐ INDIAN RIVER ☐ OKEECHOBEE HIGHLANDS

### II. BASIS OF JURISDICTION (Place an "X" in One Box Only)

☐ 1 U.S. Government Plaintiff
☑ 3 Federal Question (U.S. Government Not a Party)
☐ 2 U.S. Government Defendant
☐ 4 Diversity (Indicate Citizenship of Parties in Item III)

1:2006 CV22795/DLG / SJO

### III. CITIZENSHIP OF PRINCIPAL PARTIES (Place an "X" in One Box for Plaintiff
(For Diversity Cases Only) and One Box for Defendant)

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☑ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ 4 |
| Citizen of Another State | ☐ 2 | ☑ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ 5 |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ 6 |

### IV. NATURE OF SUIT (Place an "X" in One Box Only)

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance | **PERSONAL INJURY** | **PERSONAL INJURY** | ☐ 610 Agriculture | ☐ 422 Appeal 28 USC 158 | ☐ 400 State Reapportionment |
| ☐ 120 Marine | ☐ 310 Airplane | ☐ 362 Personal Injury— | ☐ 620 Other Food & Drug | ☐ 423 Withdrawal | ☐ 410 Antitrust |
| ☐ 130 Miller Act | ☐ 315 Airplane Product | Med. Malpractice | ☐ 625 Drug Related Seizure | 28 USC 157 | ☐ 430 Banks and Banking |
| ☐ 140 Negotiable Instrument | Liability | ☐ 365 Personal Injury — | of Property 21 USC 881 | | ☐ 450 Commerce |
| ☐ 150 Recovery of Overpayment | ☐ 320 Assault, Libel & | Product Liability | ☐ 630 Liquor Laws | **PROPERTY RIGHTS** | ☐ 460 Deportation |
| & Enforcement of Judgment | Slander | ☐ 368 Asbestos Personal | ☐ 640 R.R. & Truck | ☐ 820 Copyrights | ☐ 470 Racketeer Influenced and |
| ☐ 151 Medicare Act | ☐ 330 Federal Employers' | Injury Product | ☐ 650 Airline Regs. | ☐ 830 Patent | Corrupt Organizations |
| ☐ 152 Recovery of Defaulted | Liability | Liability | ☐ 660 Occupational | ☐ 840 Trademark | ☐ 480 Consumer Credit |
| Student Loans | ☐ 340 Marine | **PERSONAL PROPERTY** | Safety/Health | | ☐ 490 Cable/Sat TV |
| (Excl. Veterans) | ☐ 345 Marine Product | ☐ 370 Other Fraud | ☐ 690 Other | **SOCIAL SECURITY** | ☐ 810 Selective Service |
| ☐ 153 Recovery of Overpayment | Liability | ☐ 371 Truth in Lending | **LABOR** | ☐ 861 HIA (1395ff) | ☐ 850 Securities/Commodities/ |
| of Veteran's Benefits | ☐ 350 Motor Vehicle | ☐ 380 Other Personal | ☐ 710 Fair Labor Standards | ☐ 862 Black Lung (923) | Exchange |
| ☐ 160 Stockholders' Suits | ☐ 355 Motor Vehicle | Property Damage | Act | ☐ 863 DIWC/DIWW (405(g)) | ☐ 875 Customer Challenge |
| ☐ 190 Other Contract | Product Liability | ☐ 385 Property Damage | ☐ 720 Labor/Mgmt. Relations | ☐ 864 SSID Title XVI | 12 USC 3410 |
| ☐ 195 Contract Product Liability | ☐ 360 Other Personal | Product Liability | ☐ 730 Labor/Mgmt.Reporting | ☐ 865 RSI (405(g)) | ☐ 890 Other Statutory Actions |
| ☐ 196 Franchise | Injury | | & Disclosure Act | **FEDERAL TAX SUITS** | ☐ 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS** | **PRISONER PETITIONS** | ☐ 740 Railway Labor Act | ☐ 870 Taxes (U.S. Plaintiff | ☐ 892 Economic Stabilization Act |
| ☐ 210 Land Condemnation | ☐ 441 Voting | ☐ 510 Motions to Vacate | ☐ 790 Other Labor Litigation | or Defendant) | ☐ 893 Environmental Matters |
| ☐ 220 Foreclosure | ☐ 442 Employment | Sentence | ☐ 791 Empl. Ret. Inc. | ☐ 871 IRS—Third Party | ☐ 894 Energy Allocation Act |
| ☐ 230 Rent Lease & Ejectment | ☐ 443 Housing/ | **Habeas Corpus:** | Security Act | 26 USC 7609 | ☐ 895 Freedom of Information |
| ☐ 240 Torts to Land | Accommodations | ☐ 530 General | | | Act |
| ☐ 245 Tort Product Liability | ☐ 444 Welfare | ☐ 535 Death Penalty | | | ☐ 900 Appeal of Fee Determination |
| ☑ 290 All Other Real Property | ☐ 445 Amer. w/Disabilities - | ☐ 540 Mandamus & Other | | | Under Equal Access |
| | Employment | ☐ 550 Civil Rights | | | to Justice |
| | ☐ 446 Amer. w/Disabilities - | ☐ 555 Prison Condition | | | ☐ 950 Constitutionality of |
| | Other | | | | State Statutes |
| | ☐ 440 Other Civil Rights | | | | |

### V. ORIGIN (Place an "X" in One Box Only)

☑ 1 Original Proceeding
☐ 2 Removed from State Court
☐ 3 Re-filed (see VI below)
☐ 4 Reinstated or Reopened
☐ 5 Transferred from another district (specify)
☐ 6 Multidistrict Litigation
☐ 7 Appeal to District Judge from Magistrate Judgment

### VI. RELATED/RE-FILED CASE(S).

(See instructions second page):

a) Re-filed Case ☐ YES ☑ NO       b) Related Cases ☐ YES ☑ NO

JUDGE _____       DOCKET NUMBER _____

### VII. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing and Write a Brief Statement of Cause (**Do not cite jurisdictional statutes unless diversity**):

RESPA Sec.6, 12 U.S.C. Sec. 2605 / FDCPA 15 U.S.C. Sec. 1692F

LENGTH OF TRIAL via _8_ days estimated (for both sides to try entire case)

### VIII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER F.R.C.P. 23       DEMAND $ _____

CHECK YES only if demanded in complaint:

JURY DEMAND: ☑ Yes ☐ No

ABOVE INFORMATION IS TRUE & CORRECT TO THE BEST OF MY KNOWLEDGE

SIGNATURE OF ATTORNEY OF RECORD _____

DATE 11/13/06

11/14/06