UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
CASE NO. 06-22795-CIV-O'SULLIVAN
[CONSENT]

LASCELLES GEORGE MCLEAN
and VIRGINIA MCLEAN,
                        Plaintiffs,

vs.

GMAC MORTGAGE CORPORATION,
a foreign corporation,
                        Defendant.
_____/

## ORDER

**THIS MATTER** is before the Court on GMACM's Motion for Summary Final

Judgment (DE # 64, 1/7/08).  The parties have consented to the disposition of the

instant case by a United States Magistrate Judge. <u>See</u> Notice of Filing (DE# 30, 9/7/07).

Having carefully reviewed the applicable filings, exhibits and the law, it is

ORDERED AND ADJUDGED that GMACM's Motion for Summary Final

Judgment (DE # 64, 1/7/08) is **GRANTED in part and DENIED in part** as more fully

explained below.

## BACKGROUND

On November 14, 2006, the plaintiffs filed the instant action against GMAC

Mortgage Corporation (hereinafter "GMAC" or "defendant"). <u>See</u> Complaint (DE# 1,

11/14/06). The plaintiffs are proceeding <u>pro se</u> following the withdrawal of their counsel.

<u>See</u> Order (DE# 36, 10/5/07). In the First Amended Complaints[1] the plaintiffs allege the

_____

[1] The plaintiffs filed two Amended Complaints, one on behalf of each plaintiff.
<u>See</u> Plaintiff Virginia McLean's First Amended Complaint (DE# 54, 12/12/07) and

following causes of action against GMAC: Count I - Real Estate Settlement Procedures Act (hereinafter "RESPA") violations; Count II - Fair Debt Collection Practices Act (hereinafter "FDCPA") violations; Count III - Florida Deceptive and Unfair Trade Practices Act (hereinafter "FDUTPA") violations; Count IV - Breach of Contract; Count V - Breach of Fiduciary Duty; Count VI - Fraud; Count VII - Negligence and Count VIII - Injunctive and Declaratory Relief. See First Amended Complaints (DE# 54, 12/12/07).

On January 7, 2008, the defendant filed GMACM's Motion for Summary Final Judgment (DE # 64, 1/7/08). The plaintiffs filed numerous motions for extension of time. Plaintiff Virginia McLean also sought an indefinite stay of the proceedings citing medical problems. The motion to stay was filed only as to Virginia McLean and plaintiff Lascelles George McLean did not seek to stay the proceedings on his behalf. Despite multiple extensions of time, the plaintiffs failed to file a response to the instant motion.[2] Rule 7.1(C), Local Rules for the United States District Court for the Southern District of Florida, provides, in pertinent part:

---

Plaintiff Lascelles McLean's First Amended Complaint (DE# 55, 12/12/07). The allegations in each complaint are the same. Thus, in this Order, the Court will refer to only to Virginia McLean's First Amended Complaint (DE# 54, 12/12/07).

[2] Most recently, the Court gave the plaintiffs until April 29, 2008 to file their response to the defendants' summary judgment motion. See Order (DE# 129, 4/22/08). Instead of filing a response on April 29, 2008, plaintiff Virginia McLean filed additional medical records in support of her motion for reconsideration of the Court's Order denying her request for an indefinite stay of the instant case. See Notice of Filing New Medical Evidence in Support of Plaintiff's Motion for Reconsideration (DE# 130, 4/29/08). The plaintiff filed this document despite the Court's warning that it "will not grant any further extensions if the plaintiffs fail to file their response by April 29, 2008." See Order (DE# 129, 4/22/08).

> Each party opposing a motion shall serve an opposing memorandum of law no later than ten days after service of the motion as computed in the Federal Rules of Civil Procedure. **Failure to do so may be deemed sufficient cause for granting the motion by default**.

(Emphasis supplied). Nonetheless, "the district court cannot base the entry of summary judgment on the mere fact that the motion was unopposed, but, rather must consider the merits of the motion." United States v. One Piece of Property, 5800 NW 74th, Miami, Fla., 363 F.3d 1099, 1101 (11th Cir. 2004). Thus, the Court will address the merits of the instant Motion.

## FACTS[3]

The parties' dealings span over 16 years, encompassing three bankruptcies,[4] two foreclosure proceedings and the instant action. In January 1992, the plaintiffs purchased their home at 216 Shadow Way, Miami Springs, Florida 33166 (hereinafter "subject property") with a mortgage from GMAC. From 1993 to 1996, the plaintiffs made some late mortgage payments to GMAC. In June 1997, the plaintiffs began missing their mortgage payments.

---

[3] GMAC included a statement of undisputed facts pursuant to Local Rule 7.5 in its Motion for Summary Judgment (DE# 64 at 8-20, 1/7/08). The plaintiffs did not respond to the instant motion and have failed to provide a "single concise statement of the material facts as to which it is contended that there exists a genuine issue to be tried" in accordance with Local Rule 7.5(B). Local Rule 7.5(D) provides that the failure to controvert a statement of undisputed facts deems the movant's statement admitted if supported by evidence on the record. Although GMAC's statement violates the page limitation in 7.5(C), as does GMAC's motion, the Court will apply Rule 7.5(D) where appropriate.

[4] The plaintiffs initiated a fourth proceeding in the bankruptcy court on August 7, 2006. The plaintiffs' complaint in that proceeding encompassed much of the claims raised in the instant case. On October 30, 2006, the bankruptcy court dismissed the complaint without prejudice for lack of subject matter jurisdiction.

**1.      State Court and Bankruptcy Court Proceedings**

In November 1997, GMAC initiated foreclosure proceedings on the subject

property. See GMAC Mortg. Corp v. McLean, No. 13-1997-CA-026114-0000-01. GMAC

voluntarily dismissed the foreclosure action in January 1998 after the plaintiffs tendered

the balance of the unpaid mortgage payments.

In 1998, the plaintiffs again defaulted on their mortgage. GMAC initiated a

second foreclosure action in July 1998. See GMAC Mortg. Corp v. McLean, No. 13-

1998-CA-016416-0000-01.

In October 1998, the plaintiffs filed their initial petition for bankruptcy (No. 98-

19925- BKC-RAM, hereinafter "First Bankruptcy") in an effort to stop the foreclosure

action. On January 15, 1999, GMAC sent correspondence to the plaintiffs' bankruptcy

counsel, advising her of certain loan repayment options that could be available to the

plaintiffs including "recapitalizing the delinquent mortgage payments, extending the

maturity date, and/or reducing the interest rate." The letter further stated:

> We are sending you this letter and will make our best efforts to work with
> your client; however, we cannot guarantee that any of the above-
> referenced alternatives will be formally approved and effectuated.
> Approval may require pre-approval by the [b]ankruptcy [c]ourt, consent to
> lift the automatic stay or a dismissal of the case.

The letter also requested certain documents and information from the plaintiffs. The

parties dispute whether the plaintiffs submitted the requested information.

On February 24, 1999, the bankruptcy judge rejected the confirmation of the

proposed Chapter 13 plan and entered an order dismissing the First Bankruptcy. The

order of dismissal precluded the plaintiffs from filing a petition for bankruptcy for a

4

period of 180 days. The order specifically noted the plaintiffs' failure to make payments to the trustee and conditioned the filing of any motions for reconsideration or to vacate the order of dismissal upon the plaintiffs tendering funds to bring the Chapter 13 plan current.

Following the dismissal of the First Bankruptcy, GMAC set its motion for summary judgment and award of attorney's fees in the foreclosure action for hearing on June 3, 1999. On June 8,1999, the state court judge entered a final judgment of mortgage foreclosure and set the foreclosure sale of the subject property for September 9, 1999, if the plaintiffs were unable to pay the judgment. The foreclosure sale took place on September 9, 1999. GMAC was the successful bidder at the sale and a new Certificate of Title for Property was issued on September 21, 1999 listing GMAC as the owner of the subject property.

GMAC obtained a writ of possession for the subject property on October 1, 1999. On December 3, 1999, the plaintiffs filed a motion to vacate the final judgment of foreclosure and the judicial sale on due process grounds. In their motion, the plaintiffs claimed that they had not received a copy of the final judgment of mortgage foreclosure entered on June 3, 1999 and that they were not aware of the September 9, 1999 judicial sale date of their property.

On December 14, 1999, the state court held a hearing on the plaintiffs' motion. On that date, the state court granted the plaintiffs' motion and a new judicial sale date was set for January 27, 2000.

In January 2000, GMAC filed a motion seeking to correct a scrivener's error in

the final judgment. In the initial judgment of mortgage foreclosure, the legal description of the subject property indicated that the property was located in Miami, Florida. GMAC sought to change the legal description to correctly reflect that the subject property was located in Miami Springs, Florida. As a result, the January 27, 2000 judicial sale was cancelled and on February 1, 2000, the state court entered an amended final judgment of foreclosure resetting the judicial sale for April 19, 2000.

On January 25, 2000, the plaintiffs filed for bankruptcy a second time (No. 00-10559- BKC-AJC, hereinafter "Second Bankruptcy"). On March 10, 2000, the bankruptcy court dismissed the Second Bankruptcy with prejudice for 180 days because the plaintiffs failed to attend a creditors' meeting. On March 13, 2000, the plaintiffs sent a letter to the bankruptcy court judge explaining why they had failed to attend the creditor's meeting and requesting that their bankruptcy be reinstated. The plaintiffs' motion to vacate the order of dismissal was set for hearing on April 25, 2000. The plaintiffs filed an emergency motion requesting that the hearing be expedited because the judicial sale was scheduled for April 19, 2000. The bankruptcy court granted the plaintiffs' motion and reset the hearing for April 12, 2000. On April 13, 2000, the bankruptcy court amended the order of dismissal to reflect that the case was dismissed without prejudice.

On April 18, 2000, the plaintiffs filed a third petition for bankruptcy (No. 00-13256- BKC-RAM, hereinafter "Third Bankruptcy"). As a result, the April 19, 2000 judicial sale was cancelled. On June 15, 2000, the bankruptcy court dismissed the Third Bankruptcy because the plaintiffs had purportedly failed to appear at a creditor's

meeting. The trustee filed an ex parte motion to reinstate the Third Bankruptcy indicating that the dismissal was erroneously entered. The motion was granted on June 20, 2000 and the order of dismissal was vacated. In the interim, GMAC obtained a new amended judgment of foreclosure setting the judicial sale of the subject property for July 13, 2000. However, after the Third Bankruptcy was reinstated, the judicial sale was cancelled and the final judgment of foreclosure was set aside. On June 30, 2000, the state court judge entered an order abating the foreclosure proceedings until the bankruptcy court lifted the automatic stay.

On September 1, 2000, GMAC filed a proof of claim indicating that at the time the Third Bankruptcy was filed, the amount of pre-petition arrearage totaled $69,597.15. The plaintiffs filed an objection to GMAC's claim. On December 15, 2000, the bankruptcy court entered an agreed order sustaining in part and overruling in part the plaintiffs' objections to GMAC's claim. The bankruptcy court's order noted that "the parties [had] settled their differences and had come to an agreement." The order limited GMAC's secured claim for arrearages to $51,000.00.

On December 28, 2000, the bankruptcy court entered an order confirming the Chapter 13 plan. The plaintiffs failed to consistently make timely confirmed plan payments and the Third Bankruptcy was dismissed and reinstated several times. After the plaintiffs failed to make payment in August 2004, the bankruptcy trustee served a notice of delinquency and motion to dismiss the Third Bankruptcy. On October 21, 2004, the plaintiffs' Third Bankruptcy was dismissed for noncompliance with the post confirmation plan payments. In November 2004, the plaintiffs were able to tender a

money order to cover their delinquency and the dismissal was vacated on November 16, 2004.

On December 8, 2004, GMAC sent a letter to the bankruptcy trustee advising her that, effective February 1, 2005, the plaintiffs' mortgage payments would more than double, from $1,674.84 to $3,923.60. The letter did not state that GMAC was incorrectly listed in the county records as the owner of the plaintiffs' property.[5] In response, the plaintiffs sent a letter to GMAC on December 15, 2004 contesting the increased payments. The letter stated, in part, the following:

> We believe that your servicing records are inaccurate because according to our records we are and have been current with escrow payments as per the Bankruptcy Plan. Please review and revise our account accordingly, Also, please send us the following: history of the account, detailed escrow analyses of the account beginning with January 1, 2000 thu February 1, 2005. Also, please identify those portions of the "increased escrow funds" that are attributable to late charges, fines, and/or penalties. We additionally request an explanation why, as servicer of the account, you did not notify us of the escrow shortage in a timely manner.

GMAC denies receiving this letter.

The plaintiffs sent a second letter dated February 14, 2005. See First Amended Complaint at ¶ 44; Appendix at 87 (DE# 64, 1/7/08). This letter was sent to GMAC, care of GMAC's counsel, and requested that GMAC provide the following information: (1) a detailed explanation for the requested increase in the plaintiffs' mortgage payments; (2) the date when the delinquency began to accrue; (3) specific amounts for all fines, penalties and late fees included in the delinquency and (4) the reasons GMAC failed to

---

[5] It is unclear from the record when GMAC learned that it was still listed on the Certificate of Title as the owner of the subject property.

give the plaintiffs timely notice of the delinquencies. On March 9, 2005, GMAC sent a four sentence letter advising the plaintiffs to "disregard any payment information . . . . [and that] [t]he payments w[ould] not be adjusted due to the current status of the account." GMAC's letter did not answer any of the plaintiffs' questions concerning their escrow account.

The plaintiffs filed a motion in March 2005 in the bankruptcy court alleging that they had recently discovered that the Miami-Dade property records showed GMAC as the owner of the subject property and that their property taxes had increased as a result. On April 18, 2005, the bankruptcy court ordered GMAC to "seek relief [from] the state court asking the court to vacate the wrongly issued Certificate of Title and requesting an order declaring that the [plaintiffs] are deemed to have held continuous title notwithstanding the issuance and recording of a Certificate of Title in the name of GMAC." On May 2, 2005, GMAC submitted a motion in state court seeking to correct the Certificate of Title, nunc pro tunc to September 21, 1999. The state court granted the motion and title returned to the plaintiffs. The foreclosure case was dismissed on May 26, 2005 pursuant to GMAC motion.

On December 19, 2005, the bankruptcy court issued an Order entitled "Order (1) Setting Further Rehearing Conference; (2) Setting Deadline for Debtors to File Motions to Compel Discovery; and (3) Setting Deadline for GMAC to File Revised Escrow Analysis." See Appendix 122 (DE# 64, 1/7/08). In paragraph 2 of this Order, the Bankruptcy Court states the following:

For the reasons stated on the record, which are incorporated herein by

reference, the Court finds that GMAC is barred from seeking any escrow shortages which may have accrued prior to December 8, 2004, other than amounts provided for in the Chapter 13 Plan. The escrow amounts included within the plan payments are res judicata in the absence of any proof that GMAC specifically requested a plan modification to account for alleged increases in taxes or insurance.

On April 18, 2006, the bankruptcy court entered a final decree and discharge of

trustee in the Third Bankruptcy. However, the bankruptcy court reopened the case on

May 25, 2006, to address certain remaining issues.  The bankruptcy court's final order

dated October 24, 2007 noted the following:

> This Court has spent a tremendous amount of time sorting through the issues, ultimately abstaining from hearing issues outside this Court's jurisdiction. In resolving issues arising during the case, the Court has imposed responsibility on GMAC for those additional taxes which statutorily could not be refunded, has barred GMAC from collecting escrow shortages which were not asserted during the course of the plan, and has set forth . . . an accounting which will permit the parties to proceed as mortgagor and mortgagee without continued court supervision.

See October 24, 2007 Order.

**2.      The Plaintiffs' Insurance Claims**

In March 2003, the plaintiffs' water heater broke. The plaintiffs submitted a claim

to their forced-placed hazard insurer, Balboa Insurance Company (hereinafter

"Balboa"). Balboa sent correspondence acknowledging receipt of the plaintiffs' claim on

June 11, 2003.  Balboa issued a check for approximately $9,000.00 to GMAC for this

claim. On September 22, 2003, GMAC sent a letter to the plaintiffs advising them that it

was in receipt of the check and would release the check to the plaintiffs if they provided

GMAC with a completed homeowner's statement along with either (1) an insurance

adjuster's detailed report if they elected to do the repairs themselves or (2) a contractor's detailed damage estimate for repairs and a copy of a signed contract between the plaintiffs and the contractor. GMAC also notified the plaintiffs that once the funds were released to the plaintiffs, GMAC would conduct periodic inspections to confirm repairs were in progress. The parties disagreed as to whether the plaintiffs provided the information requested by GMAC and whether the plaintiffs made repairs to the property.

In April 2005, the plaintiffs filed two motions in the bankruptcy court: (1) requesting that GMAC be compelled to make needed repairs on the subject property stemming from the broken water heater and (2) requesting that GMAC provide information concerning the forced-placed hazard insurance and private mortgage insurance on the subject property. On May 23, 2005, the bankruptcy court issued an order requiring GMAC to release the insurance proceeds to the plaintiffs without a release. The bankruptcy court's order specifically stated that "[t]he [plaintiffs] shall utilize the monies to make the repairs without prejudice to seeking further relief against GMAC if [the plaintiffs] can prove that GMAC wrongfully delayed release of the funds and that this delay caused the cost of repairs to exceed the insurance payment." Pursuant to the bankruptcy court's order, GMAC forwarded the insurance proceeds it had received from Balboa to the plaintiffs and provided the requested insurance information.

In November 2005, the plaintiffs submitted another claim to Balboa for damage to the subject property as a result of Hurricane Wilma. Balboa provided GMAC with a check for approximately $12,000.00 for the plaintiffs' claim. On February 7, 2006,

11

GMAC sent a letter to the plaintiffs requesting certain information and advising the plaintiffs that GMAC would not be able to proceed with the disbursement of the insurance proceeds until the missing information was provided. GMAC did not tender these proceeds until May 2006.

In May 2006, the plaintiffs made a supplemental claim to Balboa concerning damage to the subject property from Hurricane Wilma. The plaintiffs submitted a second supplemental claim to Balboa on June 18, 2006. In response to the supplemental claim, Balboa sent a check to GMAC for approximately $31,000.00 for the plaintiffs' claim. GMAC tendered the insurance funds to the plaintiffs.

## **STANDARD OF REVIEW**

The court, in reviewing a motion for summary judgment, is guided by the standard set forth in Federal Rule of Civil Procedure 56(c), which states, in relevant part, as follows:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.

Fed. R. Civ. P. 56(c). The moving party bears the burden of meeting this exacting standard. Celotex Corp. v. Catrett, 477 U.S. 317, 322-323 (1986). That is, "[t]he moving party bears 'the initial responsibility of informing the . . . [C]ourt of the basis for its motion, and identifying those portions of the 'pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it

12

believes demonstrate the absence of a genuine issue of material fact.'" U.S. v. Four

Parcels of Real Property, 941 F.2d 1428, 1437 (11th Cir. 1991) (quoting Celotex, 477

U.S. at 323).  In assessing whether the moving party has satisfied this burden, the

Court is required to view the evidence and all factual inferences arising therefrom in the

light most favorable to the non-moving party. Batey v. Stone, 24 F.3d 1330, 1333 (11th

Cir. 1994).

 Summary judgment is appropriate when there is no dispute as to any material

fact and only questions of law remain.  Id.  If the record presents factual issues, the

Court must deny the motion and proceed to trial. Adickes v. S.H. Kress & Co., 398 U.S.

144, 157 (1970). Despite these presumptions in favor of the non-moving party, the

Court must be mindful of the purpose of Rule 56 which is to eliminate the needless

delay and expense to the parties and to the Court occasioned by an unnecessary trial.

Celotex, 477 U.S. at 322-323. Consequently, the non-moving party cannot merely rest

upon his bare assertions, conclusory allegations, surmises or conjectures.  Id.  As the

Supreme Court noted in Celotex:

> [T]he plain language of Rule 56(c) mandates the entry of summary
> judgment . . . against the party who fails to make a showing sufficient to
> establish the existence of an element essential to the party's case, and on
> which the party will bear the burden of proof at trial.  In such a situation,
> there can be "no genuine issue as to any material fact," since a complete
> failure of proof concerning an essential element of the non-moving party's
> case necessarily renders all other facts immaterial.

Id.  at 322-323.  Thus, the mere existence of a scintilla of evidence in support of the

non-moving party's position is insufficient. There must be evidence on which the jury

could reasonably find for the non-movant. Anderson v. Liberty Lobby, Inc., 477 U.S.

242, 251 (1986).                    `

## ANALYSIS

GMAC seeks summary final judgment on all claims asserted by the plaintiffs in their First Amended Complaint. For the following reasons, the Court finds that GMAC is entitled to summary judgment on Count I (as to the section 2605(g) and regulation 3500.17 violations only) and Counts II - VIII. GMAC is not entitled to summary judgment on Count I as it relates to a section 2605(e) violations.

## 1.    RES JUDICATA

At the outset, GMAC argues that the plaintiffs are barred from relitigating any issue concerning the amounts of their mortgage payments (including the escrowed funds for taxes and insurance) for any period prior to December 8, 2004. See GMACM's Motion for Summary Final Judgment (DE# 64 at 23-24, 1/7/08). According to GMAC, the bankruptcy court's order dated December 19, 2005 (hereinafter "December 19, 2005 Order") provides that the escrowed amounts included in the payments made pursuant to the Chapter 13 plan are res judicata through December 8, 2004. Id.

The December 19, 2005 Order is entitled "Order (1) Setting Further Rehearing Conference; (2) Setting Deadline for Debtors to File Motions to Compel Discovery; and (3) Setting Deadline for GMAC to File Revised Escrow Analysis." See Appendix 122-124 (DE# 64, 1/7/08). In paragraph 2 of this Order, the bankruptcy court states the following:

For the reasons stated on the record, which are incorporated herein by

14

reference,[6] the Court finds that **GMAC is barred from seeking any escrow shortages which may have accrued prior to December 8, 2004, other than amounts provided for in the Chapter 13 Plan.** The escrow amounts included within the plan payments are res judicata in the absence of any proof that GMAC specifically requested a plan modification to account for alleged increases in taxes or insurance.

Id. (emphasis added).

The December 19, 2005 Order does not have the preclusive effect advocated by GMAC. It is not a final order. Additionally, there is no indication in this order that the bankruptcy court sought to extinguish all potential causes of action concerning the servicing of the mortgage which may have arisen between the parties prior to December 8, 2004. The Order merely prohibits GMAC from "seeking any escrow shortages which may have accrued prior to December 8, 2004, other than amounts provided for in the Chapter 13 Plan" and does not address the plaintiffs' rights. Notably on October 30, 2006, the bankruptcy court issued an Order dismissing the plaintiff's complaint for lack of subject matter jurisdiction. See Appendix 143 (DE# 64-3). The order of dismissal was without prejudice to pursue claims in a court of competent jurisdiction. The bankruptcy court did not limit the plaintiffs' claims to those arising after December 8, 2004.

The defendant also cites to section 1327 of the Bankruptcy Code. Section 1327(a) provides that "[t]he provisions of a confirmed plan bind the debtor and each creditor, whether or not the claim of such creditor is provided for by the plan, and

---

[6] GMAC has failed to provide the Court with a transcript of the December 6, 2005 Prehearing Conference which is incorporated in the Court's Order.

15

whether or not such creditor has objected to, has accepted, or has rejected the plan." 11 U.S.C. § 1327(a). GMAC argues that some of the plaintiffs' claims are barred by operation of section 1327. "As a result of contested litigation in the Third Bankruptcy regarding the amounts due under the mortgage on the [p]roperty, including escrow component, the [plaintiffs'] and GMAC[ ] negotiated a compromise agreement regarding the amount of GMAC[ ]'s claim, including the amount of the plan payments and the amount of pre-petition arrearages which consisted of unpaid principle, interest, escrow and other items." See GMACM's Motion for Summary Final Judgment (DE# 64 at 23, 1/7/08).  GMAC's argument would carry more weight if the plaintiffs were seeking to modify their monthly mortgage payments or the arrearage amount confirmed by the bankruptcy court. Instead, the plaintiffs are seeking damages arising from the statutory and common law claims discussed below.

**2.     Plaintiffs' Claims**

**Count I - Claim under RESPA**

In Count I, the plaintiffs allege that GMAC violated various provisions of RESPA. "RESPA is a consumer protection statute that regulates the real estate settlement process." Hardy v. Regions Mortg., Inc., 449 F.3d 1357, 1359 (11th Cir. 2006) (citing 12 U.S.C. § 2601(a)). Section 2601(a) describes the purpose of RESPA: "significant reforms in the real estate settlement process are needed to insure that consumers . . . are provided with greater and more timely information . . . and are protected from unnecessarily high settlement charges caused by certain abusive practices . . . ." 12 U.S.C. § 2601(a).

### a.     Section 2605(e) Violation

The plaintiffs claim that GMAC violated 12 U.S.C. § 2605(e) by failing to provide timely and adequate written responses to the plaintiffs' qualified written requests.[7] <u>See</u> First Amended Complaint (DE# 54 at ¶¶ 106, 12/12/07).

On December 8, 2004, GMAC sent a letter to the bankruptcy trustee advising her that effective February 1, 2005, the plaintiffs' mortgage payments would increase, from $1,674.84 to $3,923.60. In response, the plaintiffs claim they sent GMAC a qualified written request on December 15, 2004 contesting the increased mortgage payments and demanding a full explanation of why their payments would more than double. <u>See</u> First Amended Complaint at ¶ 43. GMAC failed to respond within the 20 days mandated by RESPA prompting the plaintiffs to send a second letter dated February 14, 2005. <u>Id.</u> at ¶ 44. GMAC responded to the second qualified written request on March 9, 2005. According to the plaintiffs, GMAC's response was untimely or inadequate under RESPA. <u>Id.</u> at ¶ 45.

---

[7] Under RESPA, a "qualified written request" is:
a written correspondence, other than notice on a payment coupon or other payment medium supplied by the servicer, that–

> (i) includes, or otherwise enables the servicer to identify, the name and account of the borrower; and

> (ii) includes a statement of the reasons for the belief of the borrower, to the extent applicable, that the account is in error or provides sufficient detail to the servicer regarding other information sought by the borrower.

12 U.S.C. § 2605(e)(1)(B).

17

GMAC argues that summary judgment is warranted on the plaintiff's section 2605(e) RESPA claim because "there is no competent record evidence proving that GMAC[ ] received a 'qualified written request' from the McLeans sufficient to trigger the requirements of 12 U.S.C. § 2605(e) . . . . [and] even assuming, <u>arguendo</u>, that the letter sent to GMAC[ ]'s bankruptcy attorneys on February 14, 2005 was sufficient to trigger the requirements of Section 2605(e), GMAC[ ] discharged any obligation . . . when it sent its letter to the [plaintiffs] dated March 9, 2005." <u>See</u> GMACM's Motion for Summary Final Judgment (DE# 64 at 26, 1/7/08). GMAC further argues that "in any event, the [plaintiffs] have sustained no recoverable damages as a result of the acts of which they complain in Count I of the pleading." <u>Id.</u> at 26.

GMAC is not entitled to summary judgment on the plaintiffs' section 2605(e) claim. Whether the plaintiffs sent a qualified written request dated December 15, 2005 and whether GMAC received that qualified written request is a genuine issue of material fact. In her deposition, plaintiff Virginia McLean testified that she mailed the letter to GMAC on December 15 2004. <u>See</u> Deposition of Virginia McLean at 260, Notice of Filing (DE# 60, 12/20/07). Plaintiff Lascelles George McLean similarly testified that the plaintiffs sent a letter on December 15, 2004 to which GMAC did not respond. <u>See</u> Deposition of Lascelles George McLean at 21-22, 221; Notice of Filing (DE# 59, 12/20/07). A copy of a letter from the plaintiffs dated December 15, 2004 is attached as an exhibit to the deposition of Scott Zeitz, GMAC's corporate representative. Mr. Zeitz testified that GMAC did not receive the December 15, 2004 letter. Construing the evidence in the light most favorable to the plaintiffs, there is a genuine issue of material

18

fact concerning whether the plaintiffs sent a qualified written request dated December 15, 2004 and whether GMAC received that request. See Rawlings v. Dovenmuehle Mortg. Inc., 64 F. Supp. 2d 1156, 1161 (M.D. Ala. 1999) (finding genuine issue of material fact concerning whether the plaintiff had sent a qualified written request and whether the defendant had received it). Although GMAC may present evidence at trial that it never received the December 15, 2004 correspondence from the plaintiffs, summary judgment is not appropriate on this issue.

With respect to the February 14, 2005 letter, GMAC argues that even assuming this letter was a qualified written request, GMAC discharged its obligation when it sent its letter to the plaintiffs on March 9, 2005. In the February 14, 2005 letter, the plaintiffs requested that GMAC provide the following information: (1) a detailed explanation for the requested increase in the plaintiffs' mortgage payments; (2) the date when the delinquency began to accrue; (3) specific amounts for all fines, penalties and late fees included in the delinquency and (4) the reasons GMAC failed to give the plaintiffs timely notice of the delinquencies. In response to the plaintiffs' inquiries, GMAC sent a four sentence letter dated March 9, 2005 advising the plaintiffs to "disregard any payment information . . . . [and that] [t]he payments w[ould] not be adjusted due to the current status of the account." The March 9, 2005 correspondence does not respond to the plaintiffs' questions.

The Court finds that there are genuine issues of material fact concerning whether GMAC's March 9, 2005 correspondence satisfied the requirements of RESPA. Section 2605(e)(1)(A) provides that:

> If any servicer of a federally related mortgage loan receives a qualified
> written request from the borrower (or an agent of the borrower) for
> information relating to the servicing of such loan, the servicer shall provide
> a written response acknowledging receipt of the correspondence within 20
> days . . . unless the action requested is taken within such period.

12 U.S.C. § 2605(e)(1)(A). The March 9, 2005 correspondence is untimely with respect

to the plaintiffs' December 15, 2004 correspondence.

Although the March 9, 2005 correspondence may be timely as to the February

14, 2005 correspondence, a jury may find that the March 9, 2005 correspondence does

not satisfy the requirements of section 2605(e)(2) in that it fails to respond to any of the

inquiries raised in the plaintiffs' letters. Section 2605(e)(2) requires a loan servicer to

take certain action within 60 days of receipt of a qualified written request. Such action

may include:

> provid[ing] the borrower with a written explanation or clarification that
> includes . . . (i) information requested by the borrower or an explanation of
> why the information requested is unavailable or cannot be obtained by the
> servicer; and (ii) the name and telephone number of an individual
> employed by, or the office or department of, the servicer who can provide
> assistance to the borrower.

12 U.S.C. § 2605(e)(2). Whether GMAC's March 9, 2005 letter satisfied the

requirements of section 2605(e) is a genuine issue of material fact and GMAC is not

entitled to summary judgment on the plaintiffs' RESPA claims under section 2605(e)

(qualified written requests).

The plaintiffs also allege a violation of section 2605(e)(3) based on GMAC's

alleged reporting of negative credit information about the plaintiffs to more than one

credit reporting agency on January 1, 2005, March 1, 2005 and/or April 1, 2005.

20

RESPA prohibits negative reporting within 60 days from receipt of a qualified written request. Section 2605(e)(3) states that:

> During the 60-day period beginning on the date of the servicer's receipt from any borrower of a qualified written request relating to a dispute regarding the borrower's payments, **a servicer may not provide information regarding any overdue payment, owed by such borrower and relating to such period or qualified written request, to any consumer reporting agency** (as such term is defined under section 1681a of Title 15).

12 U.S.C. § 2605(e)(3) (emphasis added). The plaintiffs allege they sent their two qualified letters of requests in December 2004 and February 2005 and that during the 60 day period after receipt of each qualified written request, GMAC should not have provided information regarding an overdue payment to a credit reporting agency. GMAC fails to dispute that during the 60 day period, GMAC provided information regarding an overdue payment to a credit reporting agency. A jury may find that GMAC violated section 2605(e)(3).

GMAC argues that it is still entitled to summary judgment because the plaintiffs cannot show they incurred recoverable damages. The following damages are recoverable for a section 2605 violation: "(A) any actual damages to the borrower as a result of the failure; and (B) any additional damages, as the court may allow, in the case of a pattern or practice of noncompliance with the requirements of this section, in an amount not to exceed $1,000." 12 USC § 2605(f)(1). The term "actual damages" is not defined by RESPA and the courts disagree as to whether it includes non-pecuniary injuries such as emotional distress.

GMAC cites to In re Tomasevic, 273 B.R. 682, 687 (M.D. Fla. 2002) in arguing

21

that "the [plaintiffs] have sustained no recoverable damage" on their RESPA claims. See GMACM's Motion for Summary Final Judgment (DE# 64 at 26, 1/7/08). In <u>In re Tomasevic</u>, the court held that "[a]ctual damages [under section 2605 were] limited to economic pecuniary injury." <u>Id.</u> at 687.  The court in <u>In re Tomasevic</u> relied on <u>Katz v. Dime Sav. Bank, FSB</u>, 992 F.Supp. 250 (W.D. N.Y. 1997).

In <u>Katz</u>, as in the instant case, the plaintiff alleged that the defendant had violated RESPA by failing to respond to his qualified written requests and "mak[ing] credit reports which indicate[d] overdue payments in dispute." <u>Id.</u> at 256. The plaintiff in <u>Katz</u> urged the court to "construe [the damages provision in section 2605] broadly to include personal injuries as a form of recoverable actual damage, arguing that it [wa]s a consumer protection statute." <u>Id.</u> at 255. The court rejected this argument finding that "section 2605 is not a consumer protection statute . . . [it] is part of the chapter of federal banking law involving real estate settlement procedures." <u>Id.</u>  "The similarity of wording of the provisions of section 2605 to those of consumer protection statutes is not sufficient to require this court to read a broader purpose into section 2605 or to insert additional content into the damages provision." <u>Id.</u> at 256.

By contrast, the court in <u>Rawlings v. Dovenmuehle Mortg., Inc.</u>, 64 F.Supp.2d 1156, 1166 (M.D. Ala. 1999) held that the term "actual damages" in section 2605 permitted the recovery of "any actual damages to the borrower" including non-economic damages such as mental anguish. "The court finds that both the statutory language of other sections of RESPA and RESPA's legislative history demonstrate that Congress intended RESPA to be a remedial consumer-protection statute." <u>Id.</u> at 1165. "Reading

22

the damages provision of § 2605, the court reads 'actual damages' broadly so as to encompass mental anguish damages." <u>Id.</u> at 1166. In reaching this conclusion, the court relied on "findings of other courts addressing other consumer-protection statutes that are remedial in nature, wherein [those] courts have found 'actual damages' provisions to include damages for mental anguish." <u>Id.</u> The cases relied on by the <u>Rawlings</u> court interpreted the Fair Credit Reporting Act and the Fair Debt Collection Practices Act and found that damages for humiliation and mental distress were recoverable under these statutes, respectively.

The Court is persuaded by the rationale in <u>Rawlings</u> and finds that non-pecuniary damages are recoverable as "actual damages" under section 2605. The Court is not persuaded by <u>Katz</u> because the <u>Katz</u> decision determined that RESPA was not a consumer protection statute. In <u>Hardy v. Regions Mortg., Inc.</u>, 449 F.3d 1357 (11th Cir. 2006), the Eleventh Circuit stated that "RESPA is a consumer protection statute . . . ." As a consumer protection statute, "[RESPA] must be 'construed liberally in order to best serve Congress' intent.'" <u>Rawlings</u>, 64 F. Supp. 2d at 1166 (citing <u>Ellis v. General Motors Acceptance Corp.</u>, 160 F.3d 703, 707 (11th Cir. 1998).  The Court finds that the plaintiffs have alleged recoverable damages and GMAC is not entitled to summary judgment on the plaintiffs' Section 2605(e) claims.

**b.   Section 2605(g) and Regulation 3500.17 Violations**

The plaintiffs further allege that the defendant violated 12 U.S.C. § 2605(g) and 24 C.F.R. § 3500.17(k) by failing to properly manage the plaintiffs' escrow account. <u>Id.</u> at ¶¶ 107-108. Section 2605(g) states as follows:

23

> (g) Administration of escrow accounts
>
> If the terms of any federally related mortgage loan require the borrower to make payments to the servicer of the loan for deposit into an escrow account for the purpose of assuring payment of taxes, insurance premiums, and other charges with respect to the property, **the servicer shall make payments from the escrow account for such taxes, insurance premiums, and other charges in a timely manner as such payments become due**.

12 U.S.C. § 2605 (g) (emphasis added). Regulation 3500.17 contains a similar provision. According to the plaintiffs, as early as 1996, GMAC violated RESPA and improperly billed plaintiffs for escrow items. This improper billing created a balance which GMAC used to default and foreclose on the plaintiffs.

GMAC argues that it is entitled to summary judgment on the plaintiffs' section 2605(g) and regulation 3500.17 claims because they are barred by RESPA's three year statute of limitations (12 U.S.C. § 2614) and by the doctrine of res judicata as codified by Section 1327 (a) of the Bankruptcy Code. The plaintiffs maintain that "any statute of limitations is subject to equitable tolling and/or equitable estoppel." See Plaintiff Virginia McLean's First Amended Complaint (DE# 54 at ¶ 54, 12/12/07).

With respect to the merits of the plaintiffs' section 2605(g) claim, GMAC argues that the plaintiffs' claims are frivolous because this section only applies to borrowers who are no more than 30 days past due (24 C.F.R. § 3500.17(k)) and GMAC paid all taxes, insurance premiums and other charges that were to be paid from the plaintiffs' escrow account whether or not the plaintiffs had paid the funds to GMAC.

The plaintiffs have not alleged a cause of action under section 2605(g) or regulation 3500.17. Section 2605(g) and regulation 3500.17 concern the timely

24

payment of property taxes, insurance premiums and other charges out of escrowed funds. The First Amended Complaint fails to identify any insurance premium or property tax that GMAC failed timely to pay. The plaintiffs turn section 2605(g) on its head in arguing that GMAC violated this section by improperly billing the plaintiffs for escrow items. As such, GMAC is entitled to summary judgment on the plaintiffs' section 2605(g) and regulation 3500.17 claims.

**Count II        Claim under FDCPA**

The plaintiffs argue that GMAC violated the FDCPA through its improper conduct in attempting to collect amounts not permitted by law and by using unfair and fraudulent/ unlawful collection methods in violation of 15 U.S.C. § 1692f and otherwise violating FDCPA.

According to GMAC, it is entitled to summary judgment on the plaintiffs' FDCPA count because FDCPA does not apply to a creditor's attempts to collect its own debts. See GMACM's Motion for Summary Final Judgment (DE# 64 at 27, 1/7/08). "GMAC[ ] has been the owner and holder of the note and mortgage on the Property since it was executed and delivered to GMAC[ ] by the [plaintiffs] in January of 1992." Id. In their First Amended Complaint, the plaintiffs allege that "the loan servicing rights [to the subject mortgage] may in fact have been assigned or transferred on one or more occasions, and may have been transferred back to GMAC at a time when GMAC contended that Plaintiffs were in default." See First Amended Complaint (DE# 54 at ¶ 122, 12/12/07). In paragraph 4 of the First Amended Complaint (incorporated by reference into Count II), the plaintiffs allege that "upon information and belief, Plaintiffs'

25

loan is a federally-related loan that was sold or assigned to . . . Fannie Mae." More

specifically, the plaintiffs allege that:

> A GMAC document dated April 24, 1998 and entitled "History
> Information," only produced after years of requests by the Plaintiffs,
> references a "loan service sale" occurring on November 24, 1997 and
> apparently cuts off after that date. Upon information and belief, GMAC
> conducted a loan servicing sale and did not properly notify the Plaintiffs.

See First Amended Complaint (DE# 54 at ¶ 67, 12/12/07). The Court found a document

matching the plaintiff's description as Exhibit 16 to Scott Zeitz's[8] deposition. See Notice

of Filing (DE# 72, 2/1/08).  Exhibit 16 appears to be a computer print out containing

numerous entries related to the plaintiffs' mortgage. One of the entries contains the

word "loan servic sale." The date of this entry is November 24, 1997. Mr. Zeitz testified

that Exhibit 16 was an account history from GMAC. See Deposition of Scott Zeitz at

103, Notice of Filing (DE# 72, 2/1/08). Mr. Zeitz could not explain what the term "loan

servic sale" meant but testified that he did not believe a loan service sale for the

plaintiff's mortgage had taken place.

Mr. Zeitz was also questioned about Exhibit 11. Exhibit 11 appears to be an IRS

form 1099-A entitled "Acquisition or Abandonment of Secured Property." Fannie Mae is

listed as the lender, the plaintiffs are listed as the borrowers and the subject property is

listed under "Description of property." The date of lender's acquisition or notice of

---

[8] Mr. Zeitz is GMAC's corporate representative. At the time of his deposition Mr.
Zeitz was a performance review analyst for GMAC. See Notice of Filing (DE# 72,
2/1/08).

abandonment is listed at September 9, 1999.[9] Mr. Zeitz testified that GMAC had always been the lender but acknowledged that Exhibit 11 indicated that Fannie Mae was the lender. See Deposition of Scott Zeitz at 84, Notice of Filing (DE# 72, 2/1/08). Mr. Zeitz could not explain why Fannie Mae was listed on Exhibit 11 but testified that Exhibit 11 was inaccurate. Id. at 85. The Court finds that these documents create an issue of fact as to whether GMAC at all times was the lender on the subject property.

Nonetheless, the Court finds that GMAC is entitled to summary judgment based on the statute of limitations. The statute of limitations for a FDCPA claim is one year. In the instant case, the plaintiffs have failed to allege any conduct on the part of GMAC that may have violated FDCPA during the one year period preceding the commencement of the instant action. The plaintiffs argue that GMAC violated FDCPA by attempting to collect amounts not permitted by law. However, the bankruptcy court determined the legal amount the plaintiffs must pay GMAC in monthly mortgage payments. There is no evidence that after November 14, 2005, GMAC attempted to collect other amounts from the plaintiff.  The plaintiffs have not alleged any actions undertaken by GMAC after November 14, 2005 that would constitute a violation of FDCPA. The plaintiffs' bare allegation that "[GMAC] engaged in violations of the FDCPA against the Plaintiffs within the year proceeding the filing of this action, First Amended Complaint at ¶ 124, is insufficient to survive summary judgment. Accordingly, GMAC is entitled to summary judgment on the plaintiffs' FDCPA claim.

_____

[9] This is the same date as the foreclosure sale that was later set aside by the state court.

27

**Count III        Claim under FDUTPA**

Count III of the First Amended Complaint is a cause of action under Florida's Deceptive and Unfair Trade Practices Act (hereinafter "FDUTPA"), Fla. Stat. § 501.137 et seq. The plaintiffs allege that "[GMAC's] practices were illegal, unfair or deceptive acts or practices . . . . [and] offend public policy and were immoral, unethical, oppressive and unscrupulous." See First Amended Complaint (DE# 54 at ¶ 130, 12/12/07). More specifically, the plaintiffs allege that "[GMAC] violated Fla. Stat. § 501.137 . . . by failing to promptly pay insurance premiums from the escrow account, and by failing to provide the [p]laintiffs with one or more annual statements of the escrow account." Id. at 131.

GMAC argues that the four year statute of limitations, Fla. Stat. § 95.11(3), bars any FDUTPA claims prior to November 14, 2002 and that the res judicata effect of the bankruptcy court's December 19, 2005 Order further bars any FDUTPA claims prior to December 8, 2004. GMAC also argues that it is entitled to summary final judgment because there is no record evidence supporting a FDUTPA claim against GMAC and FDUTPA exempts from coverage "any act or practice required or specifically permitted by federal or state law." See GMACM's Motion for Summary Final Judgment (DE# 64 at 29, 1/7/08) (internal citation omitted). GMAC does not identify the instances in which it was acting pursuant to state or federal law.

The Court finds that the plaintiffs' claims arising prior to November 14, 2002 are time barred. Additionally, GMAC is entitled to summary judgment on the plaintiffs' claim that GMAC failed to promptly pay insurance premiums. The plaintiffs have not

presented any record evidence that GMAC failed to promptly pay insurance premiums from the escrow account. In fact, the plaintiffs made several claims on the Balboa insurance policy forced-placed by GMAC.

The Court also finds that GMAC is entitled to summary judgment on the plaintiffs' claim that GMAC failed to provide the plaintiffs with one or more annual statements of the escrow accounts. This allegation, without more, is insufficient to support a claim under FDUTPA. FDUTPA is a consumer protection law intended to "protect the consuming public and legitimate business enterprises from those who engage in unfair methods of competition, or unconscionable, deceptive, or unfair acts or practices in the conduct of any trade or commerce." Fla. Stat § 501.202(2). To state a cause of action under FDUTPA, a consumer must allege sufficient facts to show he was actually aggrieved by an unfair or deceptive act committed by the seller in the course of trade or commerce. Tuckish v. Pompano Motor Co., 337 F. Supp. 2d 1313, 1320 (S.D. Fla. 2004). The plaintiffs' First Amended Complaint,[10] as it specifically relates to the FDUTPA Count, fails to allege how the plaintiffs were harmed as result of GMAC's failure to provide one or more annual statements.

**Count IV    Breach of Contract**

In their First Amended Complaint, the plaintiffs allege that "[GMAC] incurred a

---

[10] The Court notes that the plaintiffs' First Amended Complaint contains a preliminary statement and over 100 paragraphs of factual allegations. Most of these allegations are not tied to a specific count and each successive count incorporates "the preceding allegations by reference." Due to the confusing manner in which the plaintiffs have plead their case, the Court will only consider those allegations that clearly relate to a specific count.

contractual duty pursuant to certain documents including, without limitation, the mortgage agreement obligating [GMAC] to properly administer the mortgage and escrow funds." See First Amended Complaint (DE# 54 at ¶ 135, 12/12/07).[11] In addition to its statute of limitations and res judicata arguments, GMAC argues that there are no express terms in the contract supporting a breach of contract claim based on the purported mismanagement of escrow funds. In order "to plead and prove a cause of action for breach of implied duty of good faith and fair dealing, a [p]laintiff must plead and prove that an express term of the parties' contract has been breached . . . . An implied duty of good faith cannot be used to vary the terms of a written contract either by contradicting or overriding them, or, to add terms of the contract that did not exist therein." GMACM's Motion for Summary Final Judgment (DE# 64 at 32, 1/7/08).

"The elements of a breach of contract claim are (1) a valid contract, (2) a material breach, and (3) damages." Beck v. Lazard Freres & Co., LLC, 175 F.3d 913, 914 (11th Cir.1999) (applying Florida law).[12] Under Florida law, every contract contains an implied covenant of good faith that requires that the parties conform to the standards of good faith and fair dealing in order to protect reasonable contractual expectations. Centurion Air Cargo, Inc. v. United Parcel Serv. Co., 420 F.3d 1146, 1151 (11th Cir. 2005). "A breach of the implied covenant of good faith and fair dealing is not an

---

[11] Since the plaintiffs' First Amended Complaint identifies only the mortgage agreement, the Court's inquiry will be limited to examining that document in determining whether, as a matter of law, GMAC was under certain contractual obligations.

[12] The mortgage agreement is governed by Florida law. See Mortgage Agreement at ¶ 15.

independent cause of action, but attaches to the performance of a specific contractual obligation." Id.  "[The Eleventh Circuit] has held that a claim for a breach of implied covenant of good faith and fair dealing cannot be maintained under Florida law in the absence of a breach of an express term of a contract." Id. at 1152.

The plaintiffs allege that GMAC failed to properly administer the escrow funds. Paragraph 2, addresses the plaintiffs' obligation to make monthly payments for, inter alia, taxes, hazard or property insurance premiums and mortgage insurance premiums. Paragraph 2 imposes on GMAC a duty to estimate the amount of escrow funds "on the basis of current data and **reasonable estimates** of expenditures of future Escrow items or otherwise in accordance with applicable law." Mortgage Agreement at ¶ 2 (emphasis added). In the event GMAC either underestimates or overestimates the escrow payments, paragraph 2 provides as follows:

> If the Funds held by [GMAC] exceed the amounts permitted to be held by applicable law, [GMAC] shall account to [the plaintiffs] for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by [GMAC] at any time is not sufficient to pay the Escrow Items when due, [GMAC] may so notify [the plaintiffs] in writing, and in such case [the plaintiffs] shall pay to [GMAC] the amount necessary to make up the deficiency."

See Mortgage Agreement at ¶ 2.

GMAC had a contractual obligation to make reasonable estimates of expenditures of future Escrow items. The plaintiffs have alleged that in some years GMAC underestimated the amount of escrow funds, such that the following year, the plaintiffs' mortgage payments would increase because of an escrow deficit. However,

the plaintiffs have presented no evidence[13] that GMAC's escrow estimates were unreasonable. Additionally there is no evidence that GMAC used the funds in escrow for an illegitimate purpose.[14] The record shows that GMAC used escrow funds to pay taxes and insurance premiums for the subject property. GMAC is entitled to summary judgment because the plaintiffs cannot show that GMAC breached its contractual obligation in administering the escrow account.

The plaintiffs also allege that GMAC misapplied the plaintiffs' payments and overbilled plaintiffs on their mortgage. Even if the Court were to construe this claim as stating an express breach of the mortgage agreement, GMAC would still be entitled to summary judgment. There is no record evidence that from November 14, 2001 to the present, GMAC misapplied the plaintiff's payments or collected excess mortgage payments from the plaintiffs. The record does reflect that on December 8, 2004, GMAC sent correspondence to the bankruptcy trustee advising her that the plaintiffs' mortgage payments would more than double. However, there is no evidence that the plaintiffs ever submitted these increased mortgage payments to GMAC. To the contrary, on March 9, 2005, GMAC advised the plaintiffs to disregard the increased payment notice. Additionally, the plaintiffs have not shown that they have incurred any damages that would be recoverable in a breach of contract action for failure to properly administer the

---

[13] The December 2004 letter concerning increased mortgage payments is discussed below.

[14] The plaintiffs allege that in 1997, GMAC failed to pay the force-placed insurance policy for a year, even though escrow funds were available. This claim is barred by the statute of limitations.  Fla. Stat. § 95.11(2)(b).

escrow funds or misapplying/overbilling the mortgage payments.

The plaintiffs also seek to recover against GMAC for delaying the processing and payment of their insurance claim for damage to the subject property. The record shows that the plaintiffs made property damage claims to Balboa (the forced-placed insurer), that Balboa provided GMAC with checks for these claims and that on at least two occasions, GMAC demanded additional information from the plaintiffs prior to disbursing the insurance funds. Although, with the assistance of the bankruptcy court, the plaintiffs did ultimately obtain the insurance proceeds, the plaintiffs have alleged additional damages that they incurred as a result of the delay. The plaintiffs also claim that with respect to at least one insurance check, GMAC did not provide the plaintiffs with the interest it earned in holding the funds.

Paragraph 5 of the mortgage agreement governs hazard or property insurance. Paragraph 5 provides in part:

> Unless [GMAC] and [the plaintiffs] otherwise agree in writing, insurance proceeds shall be applied to restoration or repair of the Property damaged, if the restoration or repair is economically feasible and [GMAC]'s security is not lessened. If the restoration or repair is not economically feasible or [GMAC]'s would be lessened, the insurance proceeds shall be applied to the sums secured by this Security Instrument, whether or not then due, with any excess paid to [the plaintiffs]. If [plaintiffs] abandon the Property, or does not answer within 30 days a notice from [GMAC] that the insurance carrier has offered to settle a claim, then [GMAC] may collect the insurance proceeds. [GMAC] may use the proceeds to repair or restore the Property or to pay sums secured by this Security Instrument, whether or not then due.

See Mortgage Agreement at ¶ 5.  Paragraph 5 does not expressly govern the offending conduct in the instant case, GMAC's delay in tendering the insurance proceeds and

33

withholding of interest. See Barnes v. Burger King Corp., 932 F. Supp. 1420, 1435 (11th Cir. 1996) (affirming summary judgment on a breach of contract claim where there was no express provision in the contract that would prohibit the offending action).

The plaintiffs have alleged the breach of an express term in the contract. The plaintiffs claim that GMAC concealed from the plaintiffs the existence of a loan service sale that occurred on or about November 1997.  The sale of the note or the change of loan servicer is governed by paragraph 19 of the mortgage agreement. It requires that the plaintiffs be provided with notice under paragraph 14 of the mortgage agreement. Although this claim is governed by an express term in the mortgage agreement, the claim is barred by the statute of limitations. The statue of limitations for a breach of contract claim is five years. Fla. Stat. § 95.11(2)(b). "The limitations period begins to run when 'the last element constituting the cause of action occurs.'" Beck v. Lazard Freres & Co., LLC, 175 F.3d 913, 914 (11th Cir.1999) (citing Fla. Stat. § 95.031(1)). Unlike a fraud claim, "there is no discovery rule in section 95.11(2)(b) and . . . actions for breach of contract are barred five years after the cause of action accrued regardless of whether the plaintiff knew it had that claim." Id. (citing Federal Insurance Co. v. Southwest Florida Retirement Center, Inc., 707 So. 2d 1119, 1122 (Fla. 1998)). Thus, the plaintiffs' claims as they pertain to a purported service loan sale are time barred by the five-year statute of limitations.

**Count V        Breach of Fiduciary Duty**

The plaintiffs allege that GMAC assumed a fiduciary duty toward the plaintiffs in the course of administering escrow accounts, collecting escrow funds and paying

34

property taxes out of the escrow account. According to the plaintiffs, GMAC breached its fiduciary duty by failing to act in good faith and fair dealing and loyalty with respect to its mortgage servicing practices.

In Florida, "[t]he elements of a claim for breach of fiduciary duty are: the existence of a fiduciary duty, and the breach of that duty such that it is the proximate cause of the plaintiff's damages." Gracey v. Eaker, 837 So.2d 348, 353 (Fla. 2002) (citations omitted). Under Florida law, a cause of action for breach of fiduciary duty is founded on a fiduciary relationship.  First National Bank and Trust Co. v. Pack, 789 So.2d 411 (Fla. 4th DCA 2001) (finding a fiduciary relationship between lender and customer where lender took on extra services and knew customer was relying on lender's counsel and information). A fiduciary relationship is based on trust and confidence between the parties where confidence is reposed by one party and a trust accepted by the other.  Id. (quoting Dale v. Jennings, 107 So. 175 (Fla. 1925)). Furthermore,

> [a] fiduciary duty may be express or implied.  Express fiduciary relationships are created by contract, such as principal/agent, or can be created by legal proceedings in the case of a guardian/ward.  A fiduciary relationship which is implied in law is based on the specific factual circumstances surrounding the transaction and the relationship of the parties.

Id.; see also Capital Bank v. MVB, 644 So. 2d 515 (Fla. 3d DCA 1994).

"'To establish a fiduciary relationship, a party must allege some degree of dependency on one side and some degree of undertaking on the other side to advise, counsel, and protect the weaker party.'" Taylor Woodrow Homes Florida, Inc. V. 4/46-A

35

Corp., 850 So. 2d 536, 540 (quoting Watkins v. NCNB Nat'l Bank of Fla., N.A., 622

So.2d 1063, 1065 (Fla. 3d DCA 1994)).  In contrast, in an arms-length transaction, no

fiduciary relationship exists because there is no duty imposed on either party to protect

the other. Id. at 541.

     In Sussman v. Weintraub, No. 06-20408-CIV, 2007 WL 908280 (S.D. Fla. Mar.

22, 2007), this Court addressed the issue of whether a mortgagee owed a fiduciary duty

to the mortgagor in administering the escrow funds. In concluding that no fiduciary duty

existed, the Court noted that "there [we]re no allegations by Defendants that they either

resposed confidence in [the mortgagee], nor that [the mortgagee] accepted any such

duties. Id. at *4.  The Court also declined to find that the statutory duty to pay taxes and

insurance premiums created a fiduciary duty. "These statutory duties do not impose a

fiduciary relationship between the parties, but even if they did, [the mortgagee] did pay

taxes and insurance premiums on the property." Id. at n 1.

     Paragraph 141 of the First Amended Complaint in the instant case alleges that

"[a] special confidence was reposed by consumers in Defendant as one who in equity

and good conscience was bound to act in good faith and with due regard to the

interests of the ones reposing such confidence." This conclusory allegation is

insufficient to survive summary judgment. Additionally, the plaintiffs have not shown that

GMAC accepted or had knowledge of the plaintiffs "reposing such confidence." "A

fiduciary relationship arises where 'the bank knows or has reason to know that the

customer is placing his trust and confidence in the bank and is relying on the bank so to

counsel and inform him.'" Sussman, 2007 WL 908280 at *4, n 1 (citing Capital Bank v.

MVB, Inc., 644 So. 2d 515, 519 (Fla. 3d DCA 1994)). The plaintiffs have not shown that GMAC owed a fiduciary duty to the plaintiffs in administering the escrow account or otherwise servicing the mortgage. Since there is no fiduciary relationship between the plaintiff and GMAC, GMAC is entitled to final summary judgment as to the plaintiffs' claim for breach of fiduciary duty (Count III).

**Count VI      Fraud**

Count VI of the First Amended Complaint is a cause of action for fraud. "The essential elements of a fraud claim are: (1) a false statement concerning a specific material fact; (2) the maker's knowledge that the representation is false; (3) an intention that the representation induces another's reliance; and (4) consequent injury by the other party acting in reliance on the representation." Lopez-Infante v. Union Cent. Life Ins. Co., 809 So.2d 13, 15 (Fla. 3d DCA 2002).

The plaintiffs' First Amended Complaint alleges eight instances of concealment or fraud by GMAC. These allegations include that GMAC: (1) misapplied the plaintiff's payments and overbilled the plaintiffs on their mortgage, (2) caused the plaintiff's home to be sold without providing the plaintiffs with proper notice of foreclosure, (3) failed to put title back in the plaintiffs' names after the state court vacate the sale of the plaintiffs' home, (4) concealed from the plaintiffs that additional tax charges were accruing because GMAC continued to hold title to the plaintiffs' property after the sale was vacated, (5) intentionally deceived plaintiffs into dismissing their bankruptcy proceedings by falsely representing to the plaintiffs that GMAC would create a forbearance plan if plaintiffs agreed to dismiss their bankruptcy petition, (6) destroyed

37

lost and/or failed to procure mortgage records for a material part of the year 1997 in

violation of a Court Order, (7) misrepresented to the bankruptcy court that it had never

made a PMI insurance claim relating to the property; (8) concealed from the plaintiffs

the existence of a loan service sale that occurred on or about November 1997. See

First Amended Complaint (DE# 54 at 26-27, 12/12/07).

GMAC claims it is entitled to summary final judgment on the plaintiffs' fraud claim

because (1) the economic loss rule bars a claim of fraud in the performance of a

contract and (2) all credit agreements must be in writing to be enforceable.

The Court finds that the economic loss rule bars some of the plaintiffs' fraud

claims because they arise from the contractual obligation. In Indemnity Ins. Co. of North

America v. American Aviation, 891 So.2d 532 (Fla. 2004), the Supreme Court of Florida

set forth the public policy rationale behind the Economic Loss Rule:

> The prohibition against tort actions to recover solely economic damages
> for those in contractual privity is designed to prevent parties to a contract
> from circumventing the allocation of losses set forth in the contract by
> bringing an action for economic loss in tort.  Underlying this rule is the
> assumption that the parties to a contract have allocated the economic
> risks of nonperformance through the bargaining process.  A party to a
> contract who attempts to circumvent the contractual agreement by making
> a claim for economic loss in tort is, in effect, seeking to obtain a better
> bargain than originally made.

Id. at 536. In light of the policy considerations behind the rule, courts have held tort

actions to be barred whenever a defendant has committed no breach of duty apart from

a breach of contract.  Id. at 537.

An exception to the economic loss rule exists for causes of action based on torts

which are independent of a contractual breach.  Clayton v. State Farm Mut. Auto. Ins.

Co., 729 So. 2d 1012, 1014 (Fla. 3d DCA 1999). "The test to determine if the economic

loss rule applies is to ask if the fraud alleged is an act of performance or in a term of the

bargain. When the fraud relates to the performance of the contract the economic loss

doctrine will limit the parties to their contractual remedies. However, when the fraud

occurs in . . . connection with misrepresentations, statements or omissions which cause

the complaining party to enter into a transaction, then such fraud is fraud in the

inducement and survives as an independent tort." D&M Jupiter, Inc. v. Friedopfer, 853

So.2d 485, 487 (Fla. 4th DCA 2003) (citation and internal quotation marks omitted).

Allegations (1) and (8) are barred by the economic loss rule. In allegation (1), the

plaintiffs claim that GMAC misapplied the plaintiff's payments and overbilled the

plaintiffs on their mortgage. Any obligations that GMAC owes to the plaintiffs in applying

the plaintiffs payments and billing the plaintiffs on their mortgage arises from the

mortgage agreement. The payment of the principal and interest is governed by

paragraph 1 of the mortgage agreement and the application of payments is governed

by paragraph 3. Allegation (8), that GMAC concealed from the plaintiffs the existence of

a loan service sale that occurred on or about November 1997, also arises from the

mortgage agreement. The sale of the note or the change of loan servicer is governed

by paragraph 19 of the mortgage agreement. Thus, the conduct forming the basis of the

fraud claims in allegations (1) and (8) are not separate from the obligations contained in

the mortgage agreement between the parties.

With respect to the remaining claims, GMAC is entitled to summary judgment on

other grounds. The Court finds that some of the plaintiffs' claims are barred by the

statute of limitations. A cause of action for fraud is subject to a four year statute of limitations. Fla. Stat. § 95.11 (3)(j). Thus, the plaintiffs' fraud claims are limited to those arising after November 14, 2002. Allegation (2), that GMAC caused the plaintiffs' home to be sold at a foreclosure sale without proper notice to the plaintiffs, is time barred. "As a general rule, a statute of limitations begins to run when there has been notice of an invasion of legal rights or a person has been put on notice of his right to a cause of action." Snyder v. Wernecke, 813 So.2d 213, 216 (Fla. 4th DCA 2002). The plaintiffs were aware of the foreclosure sale as early as December 3, 1999, when they moved the state court to vacate the final judgment of foreclosure and the judicial sale. As such, the plaintiffs' fraud claim based on the judicial sale of the subject property is untimely.

Similarly, GMAC is entitled to summary judgment as to allegation (5) because this claim arose in 1999 and is time barred. Additionally, it is contradicted by the record. In allegation (5), the plaintiffs allege that GMAC intentionally deceived them into dismissing their First Bankruptcy by falsely representing to the plaintiffs that GMAC would create a forbearance plan if plaintiffs agreed to dismiss their bankruptcy petition. The record shows that on January 15, 1999, GMAC sent correspondence to the plaintiffs' bankruptcy counsel, advising her of certain loan repayment options that could be available to the plaintiffs. The letter specifically stated:

> We are sending you this letter and will make our best efforts to work with your client; **however, we cannot guarantee that any of the above-referenced alternatives will be formally approved and effectuated. Approval may require pre-approval by the [b]ankruptcy [c]ourt, consent to lift the automatic stay or a dismissal of the case.**

(emphasis added). Thus, the plaintiffs could not have relied on the January 15, 1999

40

letter as a promise to create a forbearance plan. Moreover, the record shows that the First Bankruptcy was dismissed because of the plaintiffs' failure to make payments to the trustee. The bankruptcy court's February 24, 1999 order dismissing the First Bankruptcy notes the plaintiffs' failure to make payments to the trustee and specifically conditioned the filing of any motions for reconsideration or to vacate the order of dismissal upon the plaintiffs' tendering funds to bring the plan current. The plaintiffs have not presented any evidence contradicting the bankruptcy court's reason for dismissing the First Bankruptcy.

As to allegations (3) and (4), GMAC is entitled to summary judgment because some or all of the elements of a fraud claim are missing. In allegation (3), the plaintiffs claim that GMAC failed to put title back in the plaintiffs' names after the state court vacated the sale of the plaintiffs' home. In allegation (4), the plaintiffs claim that GMAC concealed from the plaintiffs that additional tax charges were accruing because GMAC continued to hold title to the plaintiffs' property after the sale was vacated. The plaintiffs have not present any evidence that GMAC made a false representation. Even if the false representation element were met as to allegations (3) and (4), the plaintiffs have not presented any evidence, other than their unsupported allegations, that GMAC knew the representation was false and that GMAC made that representation with the intent to induce the plaintiffs' reliance.  "[T]he plain language of Rule 56(c) mandates the entry of summary judgment . . . against the party who fails to make a showing sufficient to establish the existence of an element essential to the party's case, and on which the party will bear the burden of proof at trial." Celotex, 477 U.S. at 323.

41

Additionally, it is not clear that the plaintiffs can show a consequent injury. The bankruptcy court ensured that the title in the subject property was returned to the plaintiffs. Additionally, the plaintiffs incurred no additional property tax liability as a result of the years the subject property was listed in under GMAC's name.

> The record establishes that higher taxes were assessed because title was incorrectly in GMAC's name and that GMAC sought a large alleged escrow shortage in December 2004, without having previously notified the [plaintiffs] of the shortages during the nearly five years the case was pending. These facts may be relevant to the [plaintiffs'] attempt to prove that GMAC acted fraudulently or intentionally in administering the mortgage. **There is no remaining claim, however, for compensatory damages relating to the escrow issues, based on prior orders which required GMAC to absorb any additional taxes which could not be refunded, and based on the Escrow Ruling in the December 19th Order**.

Bankruptcy Court's April 18, 2006 Order; Appendix 126-127 (emphasis added).

In allegation (6), the plaintiffs seek to recover for fraud because GMAC allegedly destroyed lost and/or failed to procure mortgage records for a material part of the year 1997 in violation of a Court Order. The alleged wrongdoing does not meet any of the elements of a cause of action for fraud and the plaintiffs have not pled an independent cause of action for spoliation of evidence. GMAC is entitled to summary judgment as to allegation (6).

GMAC is also entitled to summary judgment on allegation (7), that GMAC misrepresented to the bankruptcy court that it had never made a PMI insurance claim relating to the subject property. The plaintiffs have not presented any evidence, other than conclusory allegations in their First Amended Complaint, that GMAC made a claim under the PMI insurance.

**Count VII      Negligence**

The plaintiffs' negligence claims are twofold. First, the plaintiffs allege that GMAC negligently trained, supervised and instructed employees and agents with regard to performing the practices alleged in the First Amended Complaint and that GMAC's mechanisms for supervising its staff and monitoring and approving loan servicing transactions were inadequately and negligently administered. Second, the plaintiffs allege that GMAC was grossly negligent in delaying the processing and payment of their insurance claim for hurricane damage to the subject property.

A threshold issue in a negligence claim is whether the defendant owed a duty to the plaintiff. The plaintiffs must show that there is a common law or statutory duty of care with respect to the alleged negligent conduct. Paragraph 7 of the plaintiffs' First Amended Complaint alleges that "[t]he mortgage contract placed a duty on GMAC to properly and correctly service the Plaintiffs' escrow account." See First Amended Complaint (DE# 54 at ¶ 7, 12/12/07). Because the plaintiffs have alleged no duty other than a contractual duty[15] arising from the mortgage agreement, the plaintiffs' negligence

_____

[15] At least one court found that a mortgage servicer owed a statutory duty to a mortgagor under RESPA. See Rawlings v. Dovenmuehle Mortg. Inc., 64 F. Supp. 2d 1156, 1167 (M.D. Ala. 1999) (denying summary judgment on plaintiff's negligence claim finding RESPA imposed statutory duty).

> The court finds that Defendant had a legal duty arising from a statute
> because § 2605 of RESPA imposes duties on mortgage loan servicers.
> Specifically, under § 2605, mortgage loan servicers must: (1) provide a
> notice of receipt of a qualified written request within 20 days of receipt of

claims are barred by the economic loss rule. See Weimer v. Yacht Club Point Estates, Inc., 223 So.2d 100, 103 (Fla. 4th DCA 1969) ("no cause of action in tort can arise from a breach of a duty existing by virtue of a contract."). The Court should construe pro se pleadings liberally and hold them to a less stringent standard than pleadings drafted by attorneys. Hughes v. Lott, 350 F.3d 1157, 1160 (11th Cir.2003) (quoting Tannenbaum v. United States, 148 F.3d 1262, 1263 (11th Cir.1998)). Nonetheless, pro se litigants must follow the procedural rules, and the court is not required to rewrite a deficient pleading. GJR Invs., Inc. v. County of Escambia, 132 F.3d 1359, 1369 (11th Cir.1998). The Court cannot infer a duty that was not pled in the First Amended Complaint.

**Count VIII    Injunctive and Declaratory Relief**

In Count VI, the plaintiffs seek injunctive and declaratory relief pursuant Fla. Stat. § 501.211(1) in the form of a court order protecting the plaintiffs from GMAC's future deceptive mortgage servicing practices and requiring GMAC to perform its duties as required by the mortgage agreement. The plaintiffs argue that they are in imminent peril of harm that cannot be remedied absent injunctive relief. The Court finds that GMAC is entitled to summary judgment on Count VIII. The plaintiffs are not entitled to equitable relief because they have an adequate remedy at law.

**CONCLUSION**

In accordance with the foregoing, it is

---

said request, see 12 U.S.C. § 2605(e)(1); and (2) take certain action with respect to the qualified written request within 60 days of receipt of said request, see id. § 2605(e)(2).

Id.  In the instant case, the plaintiffs do not allege a RESPA duty in their negligence count.

**ORDERED AND ADJUDGED** that GMACM's Motion for Summary Final

Judgment (DE # 64, 1/7/08) is **GRANTED in part and DENIED in part.**  GMAC is

entitled to summary judgment on Count I (as to the section 2605(g) and regulation

3500.17 violations only) and Counts II - VIII. GMAC is not entitled to summary judgment

on Count I as it relates to a section 2605(e) violations.

**DONE AND ORDERED** in Chambers at Miami, Florida, this **2nd** day of May,

2008.

_____
JOHN J. O'SULLIVAN
UNITED STATES MAGISTRATE JUDGE

Copies provided to:
All counsel on record

Lascelles G. McLean
Virginia McLean
216 Shadow Way
Miami Springs, Florida 33166